UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TANYSHA NEWMAN, *individually and on behalf of all others similarly situated*,

                       Plaintiff,

    v.

BAYER CORPORATION *and* BAYER HEALTHCARE LLC,

                   Defendants.

---

No. 22-CV-7087 (KMK)

OPINION & ORDER

<u>Appearances:</u>

Max S. Roberts, Esq.
Bursor & Fisher P.A.
New York, NY
*Counsel for Plaintiff*

Eamon P. Joyce, Esq.
Madeleine Joseph, Esq.
Sidley Austin LLP
New York, NY & Washington D.C.
*Counsel for Defendants*

Katherine Yarger, Esq.
Lehotsky Keller LLP
Aurora, CO
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

    Plaintiff Tanysha Newman ("Plaintiff") brings this putative class action against Bayer Corporation and Bayer Healthcare, LLC (collectively, "Bayer" or "Defendants"), alleging that the labeling on Defendants' "gummy" or "chewable" line of One A Day supplements is deceptive and misleading.  (*See generally* Compl. (Dkt. No. 1).)  Plaintiff brings claims for

damages against Defendants for (1) common law breach of express warranty; (2) violation of the

Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, (3) violations of §§ 349 and 350 of

the New York General Business Law ("GBL"), N.Y. Gen. Bus. Law §§ 349, 350; and (4)

common law fraud.  (*See id.* ¶¶ 42–78.)  Before the Court is Defendants' Motion To Dismiss the

Complaint (the "Motion").  (*See* Not. of Mot. (Dkt. No. 19).)  For the foregoing reasons, the

Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from the Complaint and are assumed to be true for the

purposes of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps.*

*Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Defendant Bayer Corporation is an Indiana corporation and Defendant Bayer HealthCare

LLC is a Delaware limited liability company, both with headquarters in Whippany, New Jersey.

(Compl. ¶¶ 10–11.)  Included in Defendants' product lines is a line of vitamin supplements under

the "One A Day" brand.  (*See id*. ¶ 1–2.)  As relevant to the instant Action, "Defendants' claim

behind their One A Day line of supplements is that consumers need only consume one

supplement per day to get the full nutritional benefit."  (*Id*. ¶ 1.)  However, Plaintiff alleges that

"[w]hile this may be true for Defendants' capsule supplements, it is not true for their 'gummies'

or chewable line of One A Day supplements . . . which require the consumer to take two or more

supplements per day to get the full nutritional benefit."  (*Id*.; *see also id*. ¶ 27 (providing a

representative image of a gummies bottle ingredient label).)

Plaintiff alleges that the Product's advertisements are false and misleading because, by

labeling the chewables as "One A Day," consumers are "mislead into believing that they only

need to take one Chewable per day to receive the full nutritional value when they actually have to take two or more," which means that the Product purchased by consumers "last[s] half as long as advertised."  (*Id*. ¶ 2.)  Specifically, Plaintiff alleges that the Product front label packaging "prominently advertise[s] the number of gummies contained in each bottle" which, when combined with the "One A Day" representation, "sends the message that the bottle will provide the full nutritional benefit for the same number of days as there are gummies in the bottle."  (*Id*. ¶ 3; *see also id*. ¶¶ 20–23.)



(*Id*. ¶ 19.)  Moreover, Plaintiff alleges that Defendants "communicate[] the same substantive message throughout their advertising and marketing for the supplements, including on the bottle itself and on the front of the supplements' packaging" which means that consumers have been repeatedly "exposed" to this advertising message.  (*Id*. ¶ 4; *see also id*. ¶ 29 (stating that "[t]his message has been made and repeated across a variety of media, including on Defendants' websites [and] in online promotional materials").)  Plaintiff identifies eleven chewable

supplement products distributed by Defendants that contain the alleged false and misleading marketing.  (*Id.* ¶ 18.)

In or about December 2021, Plaintiff purchased two varieties of Defendants' chewable products:  (1) One A Day Multi+ Hair, Skin & Nails and (2) One A Day Women's Key Vital Function VitaCraves from a Target, Walmart, and Dollar General in New York.  (*Id.* ¶ 9.) Plaintiff alleges that she "relied on [the] representations and warranties in determining whether to purchase the Chewables" and reasonably believed that she only had to take one chewable per day to achieve the full nutritional value.  (*Id.*)  "Had [Plaintiff] known that, contrary to Defendants' representations, she needed to take two or more gummies to receive the nutritional value of the Chewables, [Plaintiff] either would not have purchased the Chewables or would have paid substantially less for them."  (*Id.*)

B.  Procedural History

Plaintiff filed her initial Complaint on August 19, 2022.  (*See* Compl.)  On September 29, 2022, Defendants filed a pre-motion letter in anticipation of filing a motion to dismiss the Complaint.  (*See* Dkt. No. 14.)  Following Plaintiff's response to Defendant's pre-motion letter, (*see* Dkt. No. 15), the Court held a pre-motion conference on November 14, 2022 and set a briefing schedule, (*see* Dkt. (minute entry for November 14, 2022); Order (Dkt. No. 18)).

Pursuant to the briefing schedule, Defendants filed the instant Motion on December 15, 2022.  (*See* Not. of Mot.; Mem. of Law in Supp. of Mot. To Dismiss ("Defs' Mem.") (Dkt. No. 20); Decl. of Eamon P. Joyce in Supp. of Mot. ("Joyce Decl.") (Dkt. No. 21).)  Plaintiff filed her Opposition on January 17, 2023, (*see* Mem. of Law in Opp'n to Mot. To Dismiss ("Pl's Mem.") (Dkt. No. 22)), and Defendants filed their Reply on January 31, 2023, (*see* Def's Reply Mem. of

Law in Supp. of Mot. To Dismiss ("Defs' Reply") (Dkt. No. 23)).  Defendants also filed a notice

of supplemental authority on June 21, 2023.  (*See* Dkt. No. 25.)

## II.  Discussion

### A.  Standard of Review

Defendants moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure

12(b)(6).  (*See* Not. of Mot.)  The Supreme Court has held that although a complaint "does not

need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff's

obligation to provide the grounds of his entitlement to relief requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed,

Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Nor does a complaint suffice if it tenders naked assertions devoid of further factual

enhancement." *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual

allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550

U.S. at 555.  Although, "once a claim has been stated adequately, it may be supported by

showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a

plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.*

at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible,

the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second

alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79. ("Rule 8

marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior

era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam), and "draw all reasonable inferences in the plaintiff's favor," *Division 1181*, 9 F.4th at

95 (citation omitted).  Additionally, "when ruling on a Rule 12(b)(6) motion to dismiss," district

courts are directed to confine their consideration to "the complaint in its entirety, . . . documents

incorporated into the complaint by reference, and matters of which a court may take judicial

notice." *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotation marks omitted); *see also*

*Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).

Finally, fraud claims—including common law fraud claims—are subject to the

heightened pleading standard set forth in Rule 9(b).  *See Matana v. Merkin*, 957 F. Supp. 2d 473,

484 (S.D.N.Y. 2013) ("[A] claim for common law fraud under New York law must satisfy the

requirements of the heightened pleading standard under Federal Rule of Civil Procedure 9(b)."

(collecting cases)).  Rule 9(b) provides: "In alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and

other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  However,

courts "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding

condition of mind for a license to base claims of fraud on speculation and conclusory

allegations," rather "plaintiffs must allege facts that give rise to a strong inference of fraudulent

intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52, (2d Cir. 1995)). "An inference is 'strong' if it is cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Pilkington N. Am. Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 460 F. Supp. 3d 481, 492 (S.D.N.Y. 2020) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 176–77 (2d Cir. 2015)). As explained by the Second Circuit, Rule 9(b) requires a Plaintiff to "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Loreley*, 797 F.3d at 171 (citation omitted).

B. Analysis

Defendants argues that (1) Plaintiff fails to plausibly allege that reasonable consumers are deceived by the representations on the Product, (*see* Defs' Mem. 6–12); (2) Plaintiff's warranty claims should be dismissed because Defendants have made no warranties to consumers "that the serving size is one or that a single gummy provides 'full nutritional value'" and because Plaintiff otherwise failed to sufficiently plead reliance upon such alleged warranties, (*id*. at 12–13); and (3) Plaintiff failed to plead the requisite reliance and fraudulent intent to sustain a fraud claim, (*id*. at 13–14). The Court addresses each argument in turn.

1. New York General Business Law § 349 and § 350 Claims

"Section 349 [of the GBL] prohibits 'deceptive acts or practices in the conduct of any business, trade[,] or commerce,' whereas [§] 350 prohibits 'false advertising in the conduct of any business, trade[,] or commerce.'" *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (alterations omitted) (quoting N.Y. Gen. Bus. L. §§ 349, 350). "'The standard for recovery under . . . § 350, while specific to false advertising, is

otherwise identical to [§] 349,' and therefore the Court will merge its analysis of the two claims."

*Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (quoting *Goshen v.*

*Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195, n.1 (N.Y. 2002)); *see also Barreto v.*

*Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021) (same); *Duran v. Henkel of Am.,*

*Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (noting that "courts have found that the scope of

§ 350 is as broad as that of § 349 . . . and that its essential elements are the same" (alteration in

original)).  To state a claim under either section, "a plaintiff must allege that a defendant has

engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff

suffered injury as a result of the allegedly deceptive act or practice."  *Wynn*, 2021 WL 168541, at

\*2 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)); *see also Cosgrove*, 520

F. Supp. 3d at 575 (adopting the same standard); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519

F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (same).

### a.  Consumer-Oriented Conduct & Injury

Defendants appear to concede—or at least, do not contest for purposes of its Motion—

that Defendants' conduct was consumer-orientated.  (*See generally* Defs' Mem.)  "A defendant

engages in 'consumer-oriented' activity if [the company's] actions cause any 'consumer injury or

harm to the public interest.'"  *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002)

(quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)).  This

requirement is liberally construed, *id.*, and "may be satisfied by showing that the conduct at issue

'potentially affect[s] similarly situated consumers,'" *Wilson v. Northwestern Mutual Insurance*

*Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (alteration in original) (quoting *Oswego Laborers' Local 214*

*Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)).  Here, Plaintiff

alleges that Defendants "advertise, market, and distribute the chewables to thousands of

customers across the country and in the state of New York." (*See* Compl. ¶ 12.) These allegations are sufficient to satisfy the first element of Plaintiff's GBL claim. *See Karlin v. IVF Am., Inc.*, 712 N.E.2d 662, 665 (N.Y. 1999) (observing that GBL §§ 349 and 350 "apply to virtually all economic activity, and their application has been correspondingly broad" (footnote omitted) (collecting cases)); *Sheth v. N.Y. Life Ins. Co.*, 709 N.Y.S.2d 74, 75 (App. Div. 2000) (noting that the "consumer-oriented" requirement may be satisfied "by a showing that the practice has a broader impact on the consumer at large").

Defendants also appear to concede or do not contest for the purposes of its Motion that Plaintiff has sufficiently alleged an injury. (*See generally* Defs' Mem.) "An actual injury claim under [§§] 349 and 350 typically requires a plaintiff to allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Duran*, 450 F. Supp. 3d at 350 (alterations and internal quotation marks omitted) (quoting *Daniel v. Mondelez Int'l, Inc.*, 278 F. Supp. 3d 177, 195 (E.D.N.Y. 2018)). "A plaintiff can show this injury by alleging 'an overpayment, or a price premium, whereby a plaintiff pays more than she would have but for the deceptive practice.'" *Id.* (quoting *Izquierdo v. Mondelez Int'l Inc.*, No. 16-CV-4697, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2017) (internal quotation marks omitted)). However, "[t]o allege injury under a price premium theory, a plaintiff must allege not only that [the] defendant[] charged a price premium, but also that there is a connection between the misrepresentation and any harm from, or failure of, the product." *Id.* (quotation marks omitted); *see also Sabatano v. Iovate Health Scis. USA Inc.*, No. 19-CV-8924, 2020 WL 3415252, at *3 (S.D.N.Y. June 22, 2020) ("A plaintiff must also demonstrate reliance, which typically means he must point to a specific advertisement or public pronouncement upon which the consumer relied."); *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 288 (E.D.N.Y. 2009)

("In order to make a claim under [GBL § 350], a plaintiff must plead reliance on a false advertisement at the time the product was purchased." (citing *Andrew Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S.2d 400, 403 (App. Div. 2002))).  Typically, a plaintiff makes this allegation by asserting that a particular product was marketed as having a special quality, that the marketing enabled the company to charge a premium for the product, and that the plaintiff paid this premium and later discovered that the product "did not, in fact, have the marketed quality." *Duran*, 450 F. Supp. 3d at 350 (collecting cases).

Here, Plaintiff alleges that she "would not have purchased the Chewables, or would have paid substantially less for [the Product], but for Defendants' false and misleading representations that consumers needed to only take one gummy per day to receive the full nutritional value of the Chewables."  (Compl. ¶ 62; *see also id*. ¶ 71 (same).)  At this early stage of the case, these allegations suffice to allege a price premium theory of injury.  *See Fishon v. Peloton Interactive, Inc.*, No. 19-CV-11711, 2020 WL 6564755, at *11 (S.D.N.Y. Nov. 9, 2020) (allegations that the plaintiffs "would not have purchased the [product], or would not have purchased it on the same terms, [had] they kn[o]w[n] the truth," were sufficient to survive dismissal, because "[n]o more is necessary at this stage"); *Duran*, 450 F. Supp. 3d at 351 (finding that the plaintiff adequately pled a price premium theory of injury where he alleged that he and other customers "paid full price for the [p]roduct but received something inferior to what [the defendant] had promised, and that, had [the plaintiff] known that the [p]roduct [was inferior], he would not have purchased the [p]roduct, or would have only paid significantly less for it" (citations omitted)); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489, 2016 WL 4367991, at *14 (S.D.N.Y. Aug. 12, 2016) (allegation that the plaintiff "would not have paid the premium price he paid" for the product had he "known the truth" was sufficient to state injury based on price premium theory

(citation and quotation marks omitted)); *Singleton v. Fifth Generation, Inc.*, No. 15-CV-474, 2016 WL 406295, at *10 (N.D.N.Y. Jan. 12, 2016) (finding that the plaintiff stated a claim under § 349 where he alleged that, had he "known 'the truth,'" he "would not have bought the vodka, or would have paid less for it" (footnote and quotation marks omitted)).

Accordingly, Plaintiff has sufficiently alleged an injury under GBL §§ 349 and 350 in her Complaint.

### b.  Materially Misleading Conduct

Defendants instead largely focus on the second element of Plaintiff's GBL claims, arguing that Plaintiff cannot state a cognizable claim for violations of GBL §§ 349 and 350, because the Complaint "does not plausibly allege deception."  (*See* Defs' Mem. 6–12.)  To survive a motion to dismiss, plaintiffs "must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers."  *Twohig*, 519 F. Supp. 3d at 160 (internal quotation marks omitted) (quoting *Sarr v. BEF Foods, Inc.*, No. 18-CV-6409, 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020)).  "Instead, plaintiffs must 'plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'"  *Id.* (quoting *Sarr*, 2020 WL 729883, at *3); *see also Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2001) (stating "the applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled by [a defendant's] actions").  "While it is possible for a court to decide this question as a matter of law, this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage."  *Duran*, 450 F. Supp. 3d at 346 (citation omitted) (collecting cases).  "Notably, whether an interpretation is unreasonable as a matter of law is generally reached at [the motion to dismiss] stage only where, for instance, a plaintiff's claims as to the impressions that a

reasonable consumer might draw are 'patently implausible' or unrealistic." *Eidelman v. Sun Prods. Corp.*, No. 16-CV-3914, 2017 WL 4277187, at *4 (S.D.N.Y. Sept. 25, 2017) (quoting *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at *20 (E.D.N.Y. Sept. 22, 2015)); *see also In re Frito-Lay N. Am. Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) (explaining that claims which "border on fantasy" require "dismissal as a matter of law").

Here, Defendants argue that "two other federal courts [have already] dismissed identical claims" and that it would be "implausible that a purchaser would not look at the label to see what vitamins are included and in what quantity." (Defs' Mem. at 7–8 (citing *Goldman v. Bayer AG*, No. 17-CV-647, 2017 WL 3168525 (N.D. Cal. July 26, 2017), *vacated and remanded*, 742 F. App'x 325 (9th Cir. 2018); and *Howard v. Bayer Corp.*, No. 10-CV-1662, 2011 WL 13224118 (E.D. Ark. July 22, 2011)).) Plaintiff primarily argues that the "One A Day" label is so inherently misleading that, consistent with *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), "there is little chance that clarification or context on the reverse of the package will suffice to overcome a deception claim (especially at the motion-to-dismiss stage)." *Engram v. GSK Consumer Healthcare Holdings (US) Inc.*, No. 19-CV-2886, 2021 WL 4502439, at *3 (E.D.N.Y. Sept. 30, 2021). (*See also* Pl's Mem. 3–8.) For the reasons stated below, the Court agrees with Plaintiff.

At bottom, the Parties dispute the import of controlling precedent governing "predominant" ingredient claims in the Second Circuit, *Mantikas*. (*See* Defs' Mem. 9 ("This is all a misguided attempt to align this case with *Mantikas* . . . and related authority."); Pl's Mem. 4 ("Defendants' arguments fly in the face of binding Second Circuit authority.").) In *Mantikas*, the Second Circuit reviewed a challenge to Cheez-It brand crackers, which were labeled as

12

"WHOLE GRAIN" and "MADE WITH WHOLE GRAIN." *Mantikas*, 910 F.3d at 634–36. The

plaintiff in *Mantikas* "purchased one or both versions of the Cheez-Its . . . believing on the basis

of that label that the grain content was predominantly whole grain." *Id*. at 635. However, the

product was not in fact predominantly made of whole grain, but rather was predominantly made

with enriched white flour. *Id*. The Second Circuit concluded that it was plausible that the "large,

boldfaced claims of 'WHOLE GRAIN'" would communicate to a reasonable consumer that

whole grain was the predominant grain in the crackers. *Id*. at 637. Moreover, the Second Circuit

found that the misrepresentation was not cured by additional language on the front of the box

giving "the precise number of grams of whole grain per serving," because this disclosure was

consistent with the misleading representation that the grain used was primarily whole grain. *Id*.

at 636–37. In addition, while the ingredient list on the side of the box disclosed that whole grain

was not the predominant grain, the Second Circuit stated that "a reasonable consumer should not

be expected to consult the Nutrition Facts panel on the side of the box to correct misleading

information set forth in large bold type on the front of the box." *Id*. Importantly, the Second

Circuit was clear that *Mantikas* did not affect *all* ingredient-labeling claims, strictly

distinguishing cases involving "an ingredient that obviously was not the products' primary

ingredient." *Id*. at 638. For example, crackers labeled as "made with real vegetables" would not

mislead a consumer into thinking vegetables were the predominant ingredient because

consumers "would be 'familiar with the fact of life that a cracker is not composed of primarily

fresh vegetables.'" *Id*. (quoting *Red v. Kraft Foods, Inc.*, 10-CV-1028, 2012 WL 5504011, at *2

(C.D. Cal. Oct. 25, 2012)).

      While Defendants repeatedly attempt to distinguish *Mantikas* from the instant Action,

(*see* Defs' Mem. 9–10; Defs' Reply 3–4), the Court is unpersuaded. *Mantikas* is directly

relevant, and indeed dictates the outcome of the instant Motion.  As reasoned in *Mantikas*, the Product "communicat[es] by the large, bold-faced claims" to a reasonable consumer that "One A Day," or specifically, to a reasonable consumer purchasing a bottle of supplements, one *supplement* a day, is needed to receive the benefits of the Product.  *See Mantikas*, 910 F.3d at 637.  The Product is clear: One A Day.  While not dispositive, Plaintiff is also correct to point to Defendants' course of performance with this particular line, noting that "Defendants' claim behind their One A Day line of supplements . . . that the consumer need only consume one supplement per day to get the full nutritional benefit . . . may be true for Defendants' capsule supplements" in the same line.  (Compl. ¶ 1.)  Common sense would dictate that a reasonable consumer, choosing between supplement brands or products, may choose a product within a line that provides the "full nutritional value" in a single gummy, as Defendants indeed market with their other, non-chewable versions within the same line.  (*See id*. ¶ 24.)

Of course, Defendants argue that "the only way to identify the 'full nutritional value' of a serving is to look at the Supplement Facts section, which plainly discloses that the 'Serving Size' is '2 gummies.'"  (Defs' Mem. 10–11; *see also id*. at 10 ("Taken literally, the reference to One A Day could be a reference to one serving a day, one time a day, or one pill or 'gummy' a day." (alteration and quotation marks omitted).)[1]  However, this is belied by the nearly "75 years" of experience that Defendants have with their One A Day Line, where, for numerous versions of their product, they only require the consumer to take a single tablet or pill.  *See Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1163 (Cal. 2018).  As such, Plaintiff's allegations plausibly

---

[1]The Court also notes that while a reasonable consumer *may* read Defendants' representation as "one serving a day," this seems to be a stretch in common parlance.  To borrow from the familiar adage, could "an apple a day keeps the doctor away" mean that one must eat one "serving" of an apple?  The plain language of this phrase and its analog here, "One A Day," makes this seem implausible.

establish that a reasonable consumer of products within Defendants' One A Day line may unambiguously expect that they need to take a single gummy.[2]  Since "a reasonable consumer should not be expected to consult the [Supplemental Facts] on the side of the [bottle] to correct misleading information set forth in large bold type on the front of the [bottle,]" Plaintiff has indeed sufficiently alleged materially misleading conduct by Defendants.  *Mantikas*, 910 F.3d at 637.

In support of their Motion, Defendants repeatedly cite to two out-of-Circuit cases that held that Defendants' representation on the Products are not misleading.  (*See, e.g.*, Defs' Mem. 7–8 (analyzing *Goldman* and *Howard*).)  While Defendants are correct that this Court may consider cases in other districts around the country, these cases analyze consumer protection laws that differ from those at issue here, namely Arkansas and California consumer protection law.  Moreover, and unsurprisingly, neither case addresses or otherwise analyzes *Mantikas*,

---

[2] Defendants' argument that a reasonable consumer must *necessarily* look at the "Supplement Facts" to identify the "full nutritional value" is also misplaced.  (*See* Defs' Mem. 10–11.)  Defendants argue that "if a customer never looked at the Supplement Facts section, she would never see what vitamins are in the product, and would not be misled into thinking that a single gummy provides, for instance, 2000% of the Daily Value of biotin.  Indeed the consumer might not expect any biotin, or perhaps might expect 100% of the Daily Value, which is one-tenth the amount of biotin contained in a single gummy." (*Id.* at 11.)

However, Plaintiff does not allege—nor does the front label insinuate—that the Product provides any representation of what constitutes the "full nutritional benefit."  The representations do not promise, for example, *any* percentage of Biotin or any other specific vitamin for that matter.  Instead, the Product represents that a reasonable consumer need only take "One A Day" to get the nutritional benefit *of this Product*, which may or may not be sufficient for a consumer's full daily value.  As such, even under Defendants' theory, a reasonable consumer would not be compelled to look at the Supplement Facts section to clear up any ambiguity regarding what is included in the full nutritional value, as no representation about this has been made.  And, as reasoned in *Mantikas*, no label statement can correct the bold claim on the front of the package that a reasonable consumer must only take one gummy a day.

which despite Defendants' protestations is the controlling law in the Second Circuit.  *See generally Howard*, 2011 WL 13224118; *Goldman*, 2017 WL 3168525.[3]

Moreover, Defendants cite to cases largely inapplicable, as the Court has determined that *Mantikas* controls.  For example, Defendants cite to *Engram*, 2021 WL 4502439, for the proposition that a reasonable consumer will "review the directions on an SPF product for information on how often to reapply it" in the face of representations on a Chapstick brand lip balm that stated, "8 Hour Moisture" and "SPF 15".  (*See* Defs' Mem. 8 (citing *Engram*, 2021 WL 4502439, at *3).)  However, the claims were ambiguous and were far from the stated "suggestion that the product contains '8 hour sun protection'" as alleged by the plaintiff. *Engram*, 2021 WL 4502439, at *1.  Here, as discussed above, the Products prominently state that a consumer takes "One A Day."  Similarly, Defendants' citation to a case regarding an "All Butter Loaf Cake" is similarly inapposite: no reasonable consumer would look at a box that stated "All Butter Loaf Cake" with an image of a piece of cake, and assume that the product is instead, a stick of butter (i.e., "all butter").  *See Boswell v. Bimbo Bakeries USA, Inc.*, 570 F. Supp. 3d 89, 96 (S.D.N.Y. 2021).  Instead, a reasonable consumer "would need additional information to understand the meaning of 'All Butter' and would know exactly where to look to

---

[3] The Court must also note that Defendants' reliance upon *Goldman* is not only mistaken, but misguided.  *Goldman* was vacated by the Ninth Circuit in 2018 after the California Court of Appeals issued a decision in *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156 (Cal. 2018), a case upon which Plaintiff heavily relies.  Specifically, the Ninth Circuit described this case as "new relevant authority on the state law issues raised in the complaint" and "vacate[d] the order of dismissal and remand[ed the] case to the district court to reconsider the dismissal in light of *Brady*."  *Goldman v. Bayer*, 742 Fed. App'x. 325 (9th Cir. 2018) (memorandum order). Defendants appear to argue that this Court can still consider the vacated district court opinion because "California pleading standards did not control in federal court, and the Ninth Circuit made clear it was not 'prejudg[ing]' the outcome of that inquiry."  (Defs' Mem. 5.)  However, Defendants may read the import of the Ninth Circuit's decision, it does not change the fact that the district court's decision was vacated in its entirety and is no longer good law.  Accordingly, the Court will not rely upon it in resolving the instant Motion.

investigate – the ingredient list." *Id*.  Consumers here face no such ambiguity upon reading

Defendants' representations.  Finally, Defendants cite three cases in which courts found that

representations made by brand labels were not materially misleading.  (*See* Defs' Mem. 8–9.)

However, none of these brand labels made similarly strong, affirmative representations about the

contents of their products; instead, plaintiffs inferred various representations from weak brand

names.  *See Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020)

(summary order) (affirming a district court that found that no "reasonable consumer would

interpret the brand label 'Florida's Natural' as meaning that the product contains no traces of

glyphosate as a result of the planting and cultivation of oranges in its product" (quotation marks

omitted)); *Hardy v. Ole Mexican Foods, Inc.*, 616 F. Supp. 3d 247, 251–53 (W.D.N.Y. July 21,

2022) (finding that no reasonable consumer would "automatically conclude [La Banderita-

branded] tortillas were manufactured in Mexico" based on the plaintiff's "assumptions after

seeing Spanish words on the front packaging"); *see also Rooney v. Cumberland Packing Corp.*,

No. 12-CV-33, 2012 WL 1512106, at *3–4 (S.D. Cal. Apr. 16, 2012) (finding under California

law that the brand name "Sugar in the Raw" does not lead a reasonable consumer to believe that

sugar in the package is "unprocessed and unrefined" where the box "repetitively and clearly

indicates that the product contains pure natural cane turbinado sugar").

 As such, the Court finds that Plaintiff has plausibly alleged a deceptive act under the

GBL.  Accordingly, the Court denies Defendants' Motion to Dismiss the GBL claims.

### 2.  Breach of Warranty Claims

#### a.  Breach of Express Warranty

 "An express warranty is an affirmation of fact or promise made by the seller to the buyer

which relates to the goods and becomes part of the basis of the bargain."  *Barreto*, 518

F. Supp. 3d at 806 (quotation marks omitted).  To adequately state a claim for breach of an express warranty under New York law, a plaintiff must plead "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by this breach."  *Wynn*, 2021 WL 168541, at *7 (quoting *Goldemberg v. Johnson & Johnson Consumer Cos.*, *Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014)).  Under the New York Uniform Commercial Code, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."  *Singleton*, 2016 WL 406295, at *11 (alterations in original) (quoting N.Y. U.C.C. § 2–313(1)(a), (b)).  Moreover, "[a] buyer may bring a claim against a manufacturer from whom he did not purchase a product directly, since an express warranty 'may include specific representations made by a manufacturer in its sales brochures or advertisements regarding a product upon which a purchaser relies.'"  *Goldemberg*, 8 F. Supp. 3d at 482 (quoting *Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*, 858 N.Y.S.2d 405, 407 (App. Div. 2008)); *see also Randy Knitwear, Inc. v. Am. Cyanamid Co.*, 181 N.E.2d 399, 401, 404 (N.Y. 1962) ("dispens[ing] with the requirement of privity" for claims of "breach of express warranty by a remote purchaser against a manufacturer who induced the purchase by representing the quality of the goods in public advertising and on labels which accompanied the goods").

Here, Plaintiff alleges that "the Chewables do not conform to Defendants' representations about serving yield" because "Consumers must consume more than one, and in some cases up to four, chewables per day to get the full nutritional benefit[,]" and Plaintiff has suffered economic

injury as a result.  (Compl. ¶¶ 42–47.)  To start, "product labels and advertisements can create express warranties."  *Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 146 (S.D.N.Y. 2021) (collecting cases).  Moreover, "[w]hether Plaintiff's interpretation of the [Products'] label[s] was erroneous or reflected a promise made by Defendant necessarily depends on what a reasonable consumer would believe."  *Singleton*, 2016 WL 406295, at *11.  "In the context of an express warranty claim—as with a claim under GBL §§ 349–50—this inquiry 'is a matter of fact which is not appropriate for decision on a motion to dismiss.'"  *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 111 (S.D.N.Y. 2021) (quoting *Ault v. J.M. Smucker Co.*, No. 13-CV-3409, 2014 WL 1998235, at *6 (S.D.N.Y. May 15, 2014) (observing that the plaintiff's claim for breach of express warranty—based on the defendant's labeling of its product as "All Natural"—turned on "what a reasonable consumer's interpretation [of that representation] might be," which "is a matter of fact . . . not appropriate for decision on a motion to dismiss")).  "For the same reasons Plaintiff[] ha[s] plausibly alleged that the Products could mislead a reasonable consumer in violation of GBL §§ 349–50, Plaintiff[] ha[s] plausibly alleged that Defendant[s] breached an express warranty."  *Id.* (citing *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 567 (S.D.N.Y. 2016) (denying motion to dismiss express warranty claim because it "raise[d] a factual matter that [was] not appropriate to resolve on a motion to dismiss"); *Singleton*, 2016 WL 406295, at *11 (observing that the "[p]laintiff ha[d] plausibly alleged that [the] [d]efendant's vodka bottle labels could mislead a reasonable consumer, and therefore, [he] plausibly allege[d] breach of express warranties for the same reasons"); *Goldemberg*, 8 F. Supp. 3d at 483 ("[A]s the [c]ourt is unable to determine as a matter of law that the statements are not misleading under GBL § 349, it is equally inappropriate to determine they are not misleading for the [express] warranty claim"); *see also Mason*, 515 F. Supp. 3d at 146 (same).

In the alternative, Defendants argue that Plaintiff fails to plead that she relied to her detriment on the brand name because the Complaint is "devoid of any underlying factual details about comparable gummy multivitamin products, their serving sizes, and what their labels warrant about serving size and nutritional value." (Defs' Mem. 13 (quotation marks omitted).) However, Defendants appear to be applying a heightened standard to Plaintiff's pleadings that is unwarranted, "since the Rule 9(b) particularity requirement does not apply to express warranty claims." *Kitchen Winners NY Inc. v. Rock Fintek LLC*, —F. Supp. 3d—, 2023 WL 2746031, at *25 (S.D.N.Y. Mar. 31, 2023). Plaintiff's allegations, "even those not specific enough to form the basis of a fraud or negligent misrepresentation claim, are actionable" as an express warranty claim. *See id*. Moreover, Defendants cite a single, inapposite case to support their argument that Plaintiff's pleadings were insufficient. In *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877 (E.D.N.Y. 2018), the court concluded that Plaintiff "insufficiently plead his reliance" upon the warranties in the advertisements at issue because the complaint did not "provid[e] any underlying factual details concerning when, where[,] and how such reliance arose." *Id*. at 895. Importantly, the district court found that the complaint was "devoid of any facts that would permit the inference that [the p]laintiff actually read the[] statements and directly relied upon them[,]" and there were no facts illustrating that third parties viewed the advertisements and recommended the products to the plaintiff, as alleged in the complaint. *Id*. Here, Plaintiff alleges that she "purchased the chewable variants of Defendants' One A Day" line from Walmart, Target, and Dollar General. (Compl. ¶ 9.) Plaintiff alleges that "[b]ecause the Chewables were labeled 'One A Day,' [Plaintiff] reasonably believed that she only had to take one chewable per day to receive the full nutritional value" and she "relied on these representations and warranties in determining whether to purchase the Chewables." (*Id*.) Unlike

in *Oden*, it is clear from Plaintiff's allegations that she indeed read the labels and relied upon the

warranty on the Product.  Taking Plaintiff's allegations as true, this is all that is required even

under Defendants' standard in *Oden*.  *See Oden*, 330 F. Supp. 3d at 895 (searching for

allegations containing "underlying factual details concerning when, where[,] and how such

reliance arose").

Accordingly, the Court denies Defendants' Motion to Dismiss the express warranty

claim.

### b.  Magnuson-Moss Warranty Act Claim

Plaintiff also alleges a claim under the MMWA, which "grants relief to [ ] consumer[s]

'who [are] damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under

a written warranty.'"  *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 375 (S.D.N.Y. 2014)

(alterations in original) (quoting *Wilbur v. Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d

Cir. 1996)).  Under the statute, a "written warranty" is defined as "any written affirmation of fact

or written promise . . . which . . . affirms or promises that such material . . . will meet a specified

level of performance over a specified period of time."  15 U.S.C. § 2301(6)(A).  "At its core,

however, the MMWA merely incorporates and federalizes state-law breach of warranty claims,

including state-law standards for liability and damages."  *Cosgrove*, 520 F. Supp. 3d at 586

(quotation marks omitted).  Because the Court has found that Plaintiff has sufficiently pled a

breach of express warranty, Plaintiff's MMWA claim also survives the instant Motion.  *Cf.*

*Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 & n.3 (9th Cir. 2008) (explaining that

"claims under the [MMWA] stand or fall with . . . express and implied warranty claims under

state law").

### 3.  Fraud Claim

"Under New York law, stating a claim for fraud requires alleging (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff."  *Wynn*, 2021 WL 168541, at *7 (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)).  And, as explained above, to adequately plead fraud, plaintiffs must also meet the particularity requirement in Federal Rule of Civil Procedure 9(b), which "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 403 (2d Cir. 2015).  *See also supra* II.A.

Here, Defendants raise two challenges to Plaintiff's fraud claim: (1) Plaintiff failed to sufficiently allege reliance, and (2) Plaintiff failed to plead fraudulent intent with sufficient particularity.  (*See* Defs' Mem. 13–14.)  The Court agrees with Defendants that Plaintiff has failed to sufficiently allege scienter.[4]  While Plaintiff is correct that a fraud claim can plead

---

[4] Plaintiff may not have effectively pled reliance as well, as it pertains to the fraud claim. The Parties refer to their previous reliance arguments discussed as to express warranties in support of their position on fraud claims.  (*See* Defs' Mem. 13–14; Pl's Mem. 15.)  However, New York law is clear that the standard that undergirds Plaintiff's pleadings to state a claim for an express warranty is specifically cabined to express warranty claims.  As outlined by the district court in *Kitchen Winners NY*:

> As to reliance, "[t]he critical question is not whether the buyer believed in the truth of the warranted information, . . . but whether it believed it was purchasing the seller's promise as to its truth."  *CBS Inc. v. Ziff-Davis Pub. Co.*, 553 N.E.2d 997, 1000–01 (N.Y. 1990) (citation and brackets omitted).  "This view of 'reliance'— i.e., as requiring no more than reliance on the express warranty as being a part of the bargain between the parties—reflects the prevailing perception of an action for breach of express warranty as one that is no longer grounded in tort, but essentially in contract."  *Id.* at 1001.

scienter "generally," (*see* Pl's Mem. 15–16), courts have been clear that "the plaintiff must still allege *facts* that give rise to a *strong inference* of fraudulent intent." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d. 562, 585 (S.D.N.Y. 2021) (emphasis added) (quoting *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 472 (S.D.N.Y. 2020)).  "A plaintiff may demonstrate this inference by (1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or (2) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Id*. (quotation marks omitted).

Here, Plaintiff points to her "fact" pled in the Complaint, which is a direct quote from a California state court case discussing One A Day's 75-year work "convincing the public they could be trusted to divine its vitamin needs."  (Compl. ¶ 26.)  *See also Brady*, 26 Cal. App. 5th at 1163 (same); *id*. ("Most of the California consumers to whom One A Day sells have spent literally their entire lives listening to One A Day tell them, essentially, 'Trust us.  We know what you need.  You will never know as much about vitamins as we do, but you can rely on us.  Take one of our tablets every day and you won't need any other supplements.'" (emphasis omitted)).  While the Court must take Plaintiff's allegations as true at this stage, the Court is skeptical of Plaintiff's use of another court's musings upon Defendants' business model as substantial allegations of Defendants' scienter.  Moreover, Plaintiff cites *Mogull v. Pete and Gerry's Organics, LLC*, 588 F. Supp. 3d 448 (S.D.N.Y. 2022), for the proposition that it is "at least as compelling as any opposing inference one could draw from the facts alleged" that Defendants had the requisite mental state.  *See id*. at 455.  However, in *Mogull*, the Court noted that the

---

*Kitchen Winners NY Inc.*, 2023 WL 2746031, at *24 (italics omitted).  However, as neither party has adequately briefed the reliance factor in relation to the fraud claim, and because the Court finds independent reason to dismiss Plaintiff's fraud claim, the Court declines to determine whether Plaintiff adequately alleged reliance for her fraud claim.

plaintiff alleged that the brand selling "free-range" eggs "is a top distributor of eggs in the United States that is aware of the farmers' practices, is aware of how the term 'free-range' is perceived by consumers, and goes to great lengths in its packaging and website to advertise the eggs as 'free-range' eggs produced by hens roaming freely in ample space outdoors." *Id*. Here, Plaintiff makes no such allegations, either regarding Defendants' position in the marketplace, or the broad practices throughout the industry. (*See generally* Compl.) At best, a court *could* infer such an allegation from Plaintiff's quotes from *Brady*, but such an inference is by no means the requisite "*strong inference* of fraudulent intent." *Colpitts*, 527 F. Supp. 3d. at 585 (emphasis added); *see also Pilkington*, 460 F. Supp. 3d at 492 (finding a strong inference "if it is cogent and at least as compelling as any opposing inference one could draw from the facts alleged" (internal quotation marks omitted)).

Beyond this allegation, Plaintiff fails to sufficiently allege scienter throughout the rest of the Complaint. For example, while Plaintiff alleges that "Defendants have reaped enormous profits from their false advertising and sale of supplements[,]" (Compl. ¶ 30), it is well-settled that a company's general profit motive is insufficient to plead scienter. *See, e.g.*, *Duran*, 450 F. Supp. 3d at 354 ("[S]imply alleging a defendant's self-interested desire to increase sales does not give rise to an inference of fraudulent intent."). And, to the extent that Plaintiff's Complaint can be construed to claim that "[a] defendant's fraudulent intent is evinced by its failure to accurately identify the [p]roduct on the front label, when it knew its statements to be not true nor accurate," courts regularly find such allegations to be "conclusory" and to "fall short of the Rule 9(b) standard." *Colpitts*, 527 F. Supp. 3d at 585 (quotation marks omitted) (collecting cases).

Accordingly, Plaintiff's fraud claim is dismissed.

### III. Conclusion

For the foregoing reasons, Defendants' Motion is granted in part and denied in part. Specifically, Plaintiff's fraud claim is dismissed, and all other claims survive.  Because this is the first adjudication of Plaintiff's claims on the merits, the Court will deem this dismissal of the fraud claim as without prejudice.  To the extent Plaintiff has a good faith basis for filing an amended complaint to allege additional facts and otherwise addressing the deficiencies identified above, she must do so within 30 days of the date of this Opinion & Order.

The Court will hold a status conference on October 10, 2023, at 3:00 PM.  The Clerk of the Court is respectfully requested to terminate the pending motion at Dkt. No. 19.

SO ORDERED.

Dated:   September 28, 2023
         White Plains, New York

_____
        KENNETH M. KARAS
      United States District Judge