**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TANYSHA NEWMAN, individually and on behalf of all others similarly situated, | Case No. 7:22-cv-07087 |
| Plaintiff, | Hon. Kenneth M. Karas |
| v. | Hon. Andrew E. Krause |
| BAYER CORPORATION, and BAYER HEALTHCARE LLC, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Dated: July 19, 2024

**BURSOR & FISHER, P.A.**
Max S. Roberts
Caroline C. Donovan
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: mroberts@bursor.com
　　　cdonovan@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*Pro Hac Vice*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

*Proposed Class Counsel*

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ................................................................................................................1

SUMMARY OF COMMON EVIDENCE ........................................................................2

    I.    Defendants Failed To Disclose Their One A Day Vitacraves Products Had A Serving Size Of Two Gummies Per Day ........................................................2

    II.    Plaintiff Newman's Experience ........................................................................9

LEGAL STANDARD ......................................................................................................11

ARGUMENT ...................................................................................................................12

    I.    The Requirements Of Rule 23(a) Are Readily Met .......................................12

        A.    Numerosity Is Satisfied ........................................................................ 12

        B.    Commonality Is Satisfied ..................................................................... 12

        C.    Plaintiff's Claims Are Typical Of The Class ....................................... 14

        D.    Plaintiff Will Adequately Represent The Class ................................... 17

            1.    Plaintiff's Interests Do Not Conflict With The Interests Of The Class ................................................................... 17

            2.    Plaintiff's Counsel Are Qualified ................................................. 19

        E.    The Class May Be Objectively Ascertained ........................................ 19

    II.    The Proposed Class Satisfies The Requirements Of Rule 23(b)(3) ...............21

        A.    Common Questions Of Law Or Fact Predominate ............................... 21

            1.    A GBL § 349 Claim Can Be Established Through Common Evidence ....................................................................... 22

            2.    Damages Can Be Proved On A Common Basis ........................... 23

        B.    Class Litigation Is Superior To Other Methods Of Adjudication......................................................................................... 24

CONCLUSION.................................................................................................................25

i

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**CASES**

*Allegra v. Luxottica Retail N. Am.*,
   341 F.R.D. 373 (E.D.N.Y. 2022)....................................................................... 13

*Alves v. Affiliated Care of Putnam, Inc.*,
   2022 WL 1002817 (S.D.N.Y. Mar. 30, 2022)................................................... 12, 14

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ....................................................................................... 11, 21

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013) ....................................................................................... 11, 21

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000) ............................................................................. 17

*Brady v. Bayer Corp.*,
   26 Cal. App. 5th 1156 (2018) ........................................................................... 2

*Buonasera v. Honest Co., Inc.*,
   208 F. Supp. 3d 555 (S.D.N.Y. 2016) ............................................................ 18

*Cabrera v. Bayer Healthcare LLC*,
   2024 WL 1699357 (C.D. Cal. Feb. 23, 2024) ................................................. 14, 23

*Carpenters Pension Trust Fund v. Barclays PLC*,
   2015 WL 5000849 (S.D.N.Y. Aug. 20, 2015).................................................. 24

*Civic Ass'n of the Deaf v. Giuliani*,
   915 F. Supp. 622 (S.D.N.Y. 1996) ................................................................. 13

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ......................................................................................... 23

*Coty Inc. v. Excell Brands, LLC*,
   277 F. Supp. 3d 425 (S.D.N.Y. 2017) ............................................................. 8

*Ebin v. Kangadis Food Inc.*,
   297 F.R.D. 561 (S.D.N.Y. 2014)...................................................... 13, 15, 19, 20

*Famular v. Whirlpool Corp.*,
   2019 WL 1254882 ........................................................................................ 24

*Fogarazzao v. Lehman Bros., Inc.*,
    232 F.R.D. 176 (S.D.N.Y. 2005) .................................................................................. 14

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
    317 F.R.D. 374 (S.D.N.Y. 2016) ........................................................................... passim

*Gortat v. Capala Bros., Inc.*,
    257 F.R.D. 353 (E.D.N.Y. 2009) .......................................................................... 11, 12

*Hasemann v. Gerber Prods. Co*,
    331 F.R.D. 239 (E.D.N.Y. 2019) .......................................................................... 20, 23

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999) ............................................................................... 12

*In re EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) ........................................................................... passim

*In re Petrobas Securities*,
    862 F.3d 250 (2d Cir. 2017) ................................................................................... 20

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ................................................................................... 11

*Johns v. Bayer Corp.*,
    280 F.R.D. 551 (S.D. Cal. 2012) ............................................................................ 15

*Koch v. Acker, Merrall & Condit Co.*,
    18 N.Y.3d 940 (2012) ............................................................................................. 22

*Kurtz v. Kimberly-Clark Corp.*,
    321 F.R.D. 482 (E.D.N.Y. 2017) ............................................................................ 20

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018) ................................................................................... 9

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) ................................................................................... 12

*Martin v. Monsanto Co.*,
    2017 WL 1115167 (C.D. Cal. Mar. 24, 2017) ........................................................ 24

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002) ................................................................................. 21

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012) ................................................................................... 18

*Nguyen v. Algenist LLC,*
   2022 WL 17251733 (S.D.N.Y. Nov. 28., 2022) ................................................... 18

*Noble v. 93 Univ. Place Corp.,*
   224 F.R.D. 330 (S.D.N.Y. 2004) ..................................................................... 20

*Passman v. Peloton Interactive, Inc.,*
   671 F. Supp. 3d 417 (S.D.N.Y. 2023) ............................................................. 19

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985) ..................................................................................... 11

*Robidoux v. Celani,*
   987 F.2d 931 (2d Cir. 1993) ........................................................................... 14

*Rocco v. Nam Tai Elecs., Inc.,*
   245 F.R.D. 131 (S.D.N.Y. 2007) ..................................................................... 19

*Seijas v. Republic of Argentina,*
   606 F.3d 53 (2d Cir. 2010) ............................................................................. 25

*Stutman v. Chemical Bank,*
   95 N.Y.2d 24 (2000) ..................................................................................... 16

*Sykes v. Mel S. Harris and Associates LLC,*
   780 F.3d 70 (2d Cir. 2015) ................................................................. 12, 14, 22, 24

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.,*
   800 F. Supp. 2d 515 (S.D.N.Y. 2011) ............................................................... 8

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) ..................................................................................... 13

**RULES**

Fed. R. Civ. P. 23 ...................................................................................... passim

**OTHER AUTHORITIES**

E. Deborah Jay, *Ten Truths of False Advertising Surveys,*
   103 TRADEMARK REP. 1116 (2013) ..................................................................... 8

## INTRODUCTION

This case is as simple as it gets. Defendants Bayer Corporation and Bayer Healthcare LLC ("Defendants" or "Bayer") sell the One A Day Vitacraves Products,[1] which consumers, based on the "One A Day" brand name, understand to have a serving size of one gummy. But, the serving size of the Products is actually two gummies. So, either a bottle of the Product lasts only half as long as represented, or consumers are only getting half of the nutrients promised by the Product on a daily basis. Either way, consumers are only getting half of the Products' purported value and so are owed half of their money back. It's simple math.

Cases like this one are tailor made for class certification. Common evidence will show whether consumers understood "One A Day" to mean the purported serving size of the Products, whether that representation was material to consumers, and whether consumers are owed damages. Plaintiff Tanysha Newman is a typical and adequate representative of the proposed Class, and her counsel is adequate as well. And the small damages on a per Class Member basis make the class mechanism superior to any other method of redress. Further, Plaintiff is only seeking to certify a Class for her GBL § 349 claim, which is brought only on behalf of New York consumers.

Thus, Plaintiff Newman seeks to certify a Class defined as follows:

> All persons who, within the applicable statute of limitations period, purchased in the State of New York any of Defendants' One A Day Vitacraves Products for personal, family, or household purposes (the "Class").

For the following reasons, Plaintiff's Motion for Class Certification should be granted.

---

[1] The "One A Day Vitacraves Products" or the "Products" are: One A Day Vitacraves Women's, One A Day Vitacraves Men's, One A Day Vitacraves Adult, One A Day Vitacraves Teen for Him, and One A Day Vitacraves Teen for Her, in any and all sizes of the bottle. *See also* Weir Decl. Ex. 3

## SUMMARY OF COMMON EVIDENCE

I.    **DEFENDANTS FAILED TO DISCLOSE THEIR ONE A DAY VITACRAVES PRODUCTS HAD A SERVING SIZE OF TWO GUMMIES PER DAY**

The "One A Day" brand was ██████████████████████████. Roberts Decl. Ex.
1 at 39:14-20. ████████████████████████████████████████████████████

████████████████████████████████████ *Id.* at 40:9-16.  The serving size of the

tablet product was ██████████████████ and remains one to this day.  *Id.* at 40:17-24; *see*

*also* Roberts Decl. Ex. 2.

Thus, the name "One A Day" is intuitive.  After all, the product is not called "Once A

Day," or "One Serving A Day."  It is called "One A Day"—reflecting the *truthful*, *accurate* serving

size of the tablet multivitamins that were the sole vitamin product sold under the brand for several

decades.  Whatever Defendants' scientists believed consumers needed per day, they would receive

it in one tablet.  *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1163 (2018) ("Most of the California

consumers to whom One A Day sells have spent *literally* their entire lives listening to One A Day

tell them, essentially, 'Trust us. We know what you need. You will never know as much about

vitamins as we do, but you can rely on us.  Take one of our tablets every day and you won't need

any other supplements.'") (emphasis in original).  Indeed, ████████████████████████

████████████████████████ (Roberts Decl. Ex. 1 at 226:4-19), Defendants advertised

the One A Day vitamins with the tagline, ████████████████████████████████████

████████████████████

2



Roberts Decl. Ex. 3.

Several decades after launching the "One A Day" brand, ███████████████████████

████████████████████████████████████████████████████████████████████████████████████

Roberts Decl. Ex. 1 at 42:11-19.  So, ██████████████████  Defendants began selling gummy

vitamins under the "One A Day Vitacraves" brand.  *Id.* at 41:11-18, 44:20-24.  But Defendants

had a problem.  Defendants ████████████████████████████████████████████  and

if Defendants were to do that, ████████████████████████████  *Id.* at 49:2-4.  So, the One

A Day Vitacraves Products had to have a serving size of two gummies (Roberts Decl. Ex. 4),

contrary to the brand name and the decades of history prior.  And, while other gummy vitamins

███████████████████████████  (Roberts Decl. Ex. 1 at 48:18-25), no other brand is named

after the product's serving size.  *Id.* at 43:10-15 ████████████████████████████████

████████████████████████████████████

Thus, Defendants had a choice.  Defendants could have sold the gummy vitamins under

another product name, but they did not want to because they ████████████████████████

██████████████████  *Id.* at 45:7-11.  Defendants could have also put the serving size on the

front of bottle, but Defendants did not do that either.  Instead, Defendants kept the brand name as

"One A Day" and exclusively put the serving size ███████████████████ on the back.  *Id.* at

49:8-18.  Defendants, of course, believed they put the serving size ████████████████████

████████████████ (*id.* at 49:15-18), thus ostensibly obviating any confusion stemming

from the brand name.  *Id.* at 50:11-14 ████████████████████████████

█████████████████████████████████████

Defendants were mistaken.

      Since at least 2010, ██████████████████████████

█████████████████████████████████████

███████████  In October 2010, for instance, █████████████████████

█████████████████████████████████████

█████████████████████████████████████

Roberts Decl. Ex. 5 at 37130.  ███████████████████████████

█████████████████████████████████████

████  *Id.* at 37144.  ████████████████████████████

█████████████████████████████████  *Id.* at 37147.

      In September 2013, ██████████████████████████

█████████████████████████  Roberts Decl. Ex. 6 at

40360.  ███████████████████████████████

███████████████  *Id.* at 40407.  ████████████████████

█████████████████████████████████  *Id.*

at 40408.  ██████████████████████████████

█████████████████████████████  Roberts Decl.

Ex. 7 at 40955. ███████████████████████████████████████

███████████████████████ *Id.* at 40956.

In October 2013, ███████████████████████████████████

████████████████████████████████████████████████

Roberts Decl. Ex. 8 at 55142. ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ *Id.* at 55151

(emphasis added). ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████ *Id.* at 55163. █████████████

████████████████████████████████████████████████

████████████████████████████████ *Id.* at 55166. ██████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

*Id.* at 55164.

In April 2015, ████████████████████████████████████

████████████████████████████████████████████████

Roberts Decl. Ex. 9 at 42203. ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████ *Id.* at 42244 (emphasis added); *see*



*also id.* ███████████████████████████████████████████████████

███████████████████████████████████

In  June  2016,  ████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████  Roberts Decl. Ex. 10 at 43907; *see* also Roberts Decl. Ex. 1 at 196:20-22

███████████████████████████████████████████████  ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████  *Id.* at 43930.  █████████████████████████████

███████████████████████████  *Id.*

In  October  2017,  ██████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████  Roberts  Decl.  Ex.  11  at  60648.[2]  ███████

████████████████████████████████████████████  *Id.* at 60670.

In  November  2018,  ████████████████████████████████████████

████████████████████████████████████████████  Roberts  Decl.  Ex.  12 at

24161.  ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████  *Id.* at 24176.

███████████████████████████████████████████████████████████

███████████████████████████  In 2012,  █████████████████████

---

[2] A non-colorized  version  of  this  document  was  introduced  at  the  McCarthy  Deposition  as Plaintiff's Exhibit 22.

████████████████████████████████████████ Roberts Decl. Ex. 13.  In other

words, █████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████

Further, in April 2014, ██████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████ Roberts Decl. Ex. 14 at 7194.  ██████████████

███████████████████████ Kathy Hiserodt—a "contractor in brand management"

(Roberts Decl. Ex. 15 at 16:19-21)████████████████████████████████████████

Roberts Decl. Ex. 16 at 10826.[3] ████████████████████████████████████

████████████████████████████████████████ Ms. Hiserodt's reasoning

for including this question as an FAQ was self-evident:

> Q:    And why, in general, would something be put in an FAQ?
>
> A:    If it was something that we thought consumers would be concerned about.
>
> Q:    Do you think consumers would be concerned about a two-gummy dosage when the brand was called One A Day?
>
> A:    That's why I asked the question.

Roberts Decl. Ex. 15 at 37:7-14.  At the time, Defendants shrugged off this issue, with Ms. Master

claiming ████████████████████████████████████████████████████████

██████ Roberts Decl. Ex. 16 at 10826.  Yet, only one year later, Ms. Master changed her tune.

---

[3] Although Defendants redacted the exact name of the product as "Other Bayer Product," the content of the e-mail makes clear the product being discussed is a One A Day product.



Roberts Decl. Ex. 17 at 7687, 7692.  By this time, Defendants

had developed a ███████████████████████████████████████████

███████████████████████████████████████████ *Id.* at 7686.

███████████████████████████████████ Roberts Decl. Ex. 18.

Plaintiff's own findings corroborate Defendants'.  Specifically, in or about July 2024, Plaintiff commissioned "a market research survey to determine whether a significant number of the relevant consumers are misled by the Defendants' One A Day name by understanding how many gummies they think are in a serving size."  Klein Decl. ¶ 11.  The survey found a "significant number of relevant consumers"—28.6%—"who saw the One A Day product believed the product's package communicated that they should take 1 gummy per day," "with a net result of 27.1% of respondents being confused."  *Id.* ¶ 13.[4]  Thus, despite being sued no less than four times over this issue, and despite whatever efforts Defendants may claim to have taken to reduce consumer confusion, nearly one in three consumers are still deceived by Defendants' labeling. Crucially, this level of confusion is not present in other brands—only 1.5% of consumers thought the control brand without the "One A Day" representation had a serving size of one gummy.  *Id.* These findings accord with that of the Second Circuit: "a reasonable consumer should not be

---

[4] "In a credible survey a rate of 15% to 20% 'almost always' will be deemed sufficient to demonstrate consumer confusion (or deception)."  E. Deborah Jay, *Ten Truths of False Advertising Surveys*, 103 TRADEMARK REP. 1116, 1163-64 (2013) (collecting cases); *see also U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 535 (S.D.N.Y. 2011), *aff'd*, 2013 WL 490796 (2d Cir. 2013) ("The confusion levels ascertained by the Mantis surveys [27.8% and 22.5%] have been accepted as indicative of likelihood of confusion by other courts in this Circuit."); *Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 450 (S.D.N.Y. 2017) ("[I]n cases where other evidence is supportive, courts have found a likelihood of confusion when survey results are between 10% and 20%.") (cleaned up).

expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018); *see also id.* ("[R]easonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.") (cleaned up).

Finally, the "One A Day" representation is material to consumers. In addition to the evidence cited above, in September 2008, ██████████████████████████████████████ ██████████████████████████████████████████████████ Roberts Decl. Ex. 19 at 21927. ██████████████████████████ ██████████████████████████████████████████ *Id.* at 21990. For consumers, this is a matter of cost and value. As one consumer noted ██████████████ ██████████████████████████████████████████████ ██████████████████████████████ Roberts Decl. Ex. 8 at 55166; *see also id.* ██████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████; Roberts Decl. Ex. 6 at 40438 ██████████████████████ In other words, based on Defendants' own surveys, consumers do not appreciate getting so few servings per bottle—and half as many as Defendants advertise.

## II.    PLAINTIFF NEWMAN'S EXPERIENCE

Plaintiff Newman's experience was typical of consumers of the One A Day Vitacraves Products. Ms. Newman purchased the One A Day Vitacraves Product in-store for many years, including as long ago as in or about April 2019, as well as online from Walmart in December 2020. Roberts Decl. Ex. 20; *see also id.* Roberts Decl. Ex. 21 at 96:19-21 ("Q: And every other purchase

was in a store, correct?" "A: Yes."). Ms. Newman decided to purchase the Product because she did not want to take more than one vitamin a day. Roberts Decl. Ex. 21 at 105:8-9 ("I chose One A Day because of the One A Day. Like I said, I didn't want to be taking a bunch of pills."). In fact, it was the labeling of "One A Day" that "got [her] attention." *Id*. at 106:25-107:1. Specifically, when Ms. Newman saw the "One A Day" labeling, she thought it "looks like you take one a day. So [she] purchased that." *Id*. at 105:9-11. Ms. Newman reasonably "interpreted One A Day Vitacraves for Women" to mean "[she] was supposed to be taking one gummy a day." *Id*. at 73:17-19. Because the bottle explicitly states "One A Day," Ms. Newman did not look at the serving size on the back, nor did she have any reason to, and instead relied on the Product's labeling and took one gummy a day. *Id*. at 100:24-101:2 ("Q: You didn't look to see what the serving size was, right? A: No. But on your bottle, it says 'One A Day.' So that's why I only took one of those."). Ms. Newman reasonably believed the serving size was one vitamin per day, "no matter what form, whether it's a tablet, a gummy, or whatever" because the Product is called One A Day. *Id*. at 63:24-64:2 ("Well, as far as its saying 'One A Day,' I will always be under the impression I would take one a day, no matter what form the tablet [is] in, whether it's a tablet, a gummy, or whatever."). Ms. Newman believed taking one gummy a day would give her "the full benefits of the vitamins." *Id*. at 114:7-10.

Ms. Newman was misled by Defendants when she purchased the Products because she relied on Defendants' representations that the serving size was "One A Day." *Id*. at 62:15-17 ("What's misleading to me is my interpretation of when I purchased this product that One A Day Vitacraves Gummies for women meant take one a day."); *see also id*. at 63:2-4 ("Q: And how is the label misleading? A: It's saying 'One A Day,' but – on the gummies, it says 'One A Day,' but actually, you need two, not one."). Ms. Newman did not become aware of the actual serving size

until she contacted counsel. *Id.* at 205:8-15. Based on Defendants' misrepresentations, Ms. Newman received half of what she paid for, and is therefore seeking to recoup "half of what [she] paid for the vitamins." *Id.* at 67:16-18.

## LEGAL STANDARD

Class actions are an essential tool for adjudicating cases involving many small claims that are not economically feasible to prosecute individually. In drafting Fed. R. Civ. P. 23, "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Class actions give voice to plaintiffs who "would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

To qualify for certification, Plaintiff must demonstrate by a preponderance of the evidence that the putative class meets each of the four requirements of Fed. R. Civ. P. 23(a), and also satisfies at least one of the categories provided in Fed. R. Civ. P. 23(b). *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132-33 (2d Cir. 2001). Although the Court must conduct a "rigorous analysis" that "may entail some overlap with the merits of the plaintiff's underlying claim," "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013) (cleaned up). "Merits questions may be considered to the extent—but only to the extent— that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 466.

Further, "[t]he Second Circuit has emphasized that Rule 23 should be 'given liberal rather than restrictive construction.'" *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009)

(quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).  Indeed, "it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Id.* at 361-62.  Thus, "when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward." *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999).

## ARGUMENT

## I.    THE REQUIREMENTS OF RULE 23(A) ARE READILY MET

### A.    Numerosity Is Satisfied

To satisfy numerosity, Plaintiff must demonstrate "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "In this Circuit, numerosity is presumed when the putative class has at least forty members." *Alves v. Affiliated Care of Putnam, Inc.*, 2022 WL 1002817, at *20 (S.D.N.Y. Mar. 30, 2022) (Karas, J.) (cleaned up).  Here, at least ███████ One A Day Vitacraves Products were sold in the State of New York during the class period.  Weir Decl. ¶ 9.  Accordingly, numerosity is satisfied.  *See*, *e.g.*, *In re EZ Seed Litig.*, 304 F.R.D. 397, 405 (S.D.N.Y. 2015) (Briccetti, J.) ("*EZ Seed*") (numerosity met where "992,338 packages were sold in New York").

### B.    Commonality Is Satisfied

To satisfy commonality, Plaintiff must demonstrate "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  A common question is one that "drive[s] the resolution of the litigation such that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Sykes v. Mel S. Harris and Associates LLC*, 780 F.3d 70, 84 (2d Cir. 2015) (cleaned up).  Further, "[t]he Supreme Court has clarified that this prong also requires the plaintiff to demonstrate that the class members have suffered the same injury." *Alves*, 2022 WL 1002817, at *21 (cleaned up).  "Commonality does

not mandate that all class members make identical claims and arguments." *Civic Ass'n of the Deaf v. Giuliani*, 915 F. Supp. 622, 633 (S.D.N.Y. 1996) (certifying class). Indeed, "[e]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Here, there are common questions the truth or falsity of that will determine each Class Member's GBL § 349 claim, including: (i) whether Class Members understood "One A Day" to mean a serving size of one gummy per day; (ii) whether Defendants misrepresented the serving size of the One A Day Vitacraves Products; (iii) whether the serving size misrepresentation was material to Class Members; and (iv) whether Class Members overpaid for the One A Day Vitacraves Products as a result of Defendants' misrepresentations. Resolving these questions in the affirmative will mean every Class Member has a valid GBL § 349 claim and damages can be precisely calculated for each Settlement Class Member. Further, every Class Member was shown materially identical labels that each prominently bore the "One A Day" branding on the front, meaning these questions are equally applicable to all Class Members no matter which One A Day Vitacraves Product they purchased. Roberts Decl. Ex. 4 (labels for the Products).

Under such circumstances, commonality is satisfied. *See*, *e.g.*, *EZ Seed*, 304 F.R.D. at 405 ("A common question with respect to the second theory of liability is whether the 50% thicker claim is false and/or misleading. The answer to this question is common to all class members, and is apt to drive the resolution of this litigation."); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014) (commonality met where "the injuries being litigated all derive from the alleged misrepresentation of what is pomace as 100% Pure Olive Oil"); *Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 398 (E.D.N.Y. 2022) (commonality met where common questions included "whether LensCrafters' representations and omissions about AccuFit were in fact misleading or

false, and whether, as a result, class members paid a price premium for their LensCrafters eyeglasses"); *Cabrera v. Bayer Healthcare LLC*, 2024 WL 1699357, at *8 (C.D. Cal. Feb. 23, 2024) (commonality met where "class members were all exposed to the same representations" and "whether these representations were material to a reasonable person is a question of fact that can be adjudicated on a classwide basis").

### C.    Plaintiff's Claims Are Typical Of The Class

Fed. R. Civ. P. 23(a)(3) requires Plaintiff's claims to be "typical" of the class.  Fed. R. Civ. P. 23(a)(3).  "The typicality requirement is not demanding."  *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) (cleaned up).  "Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Alves*, 2022 WL 1002817, at *21 (cleaned up).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, Plaintiff, like all Class Members, purchased one of the One A Day Vitacraves Products and was exposed to the same labeling as every other Class Member (*i.e.*, the "One A Day" branding).  Roberts Decl. Exs. 4, 20, 21 at 96:19-21.  Plaintiff also testified that she, like other Class Members, "chose One A Day because of the One A Day" branding, and believed that meant "you take One A Day."  Roberts Decl. Ex. 21 at 105:8-10; *see also id.* at 101:1-2 ("[O]n your bottle, it says, 'One A Day.'  So that's why I only took one of those."); *id.* at 62:15-17 ("What's misleading to me is my interpretation of when I purchased this product that One A Day VitaCrave Gummies for women meant take one a day."); *id.* at 63:24-64:2 ("As far as it's saying 'One A Day,' I will always be under the impression I would take one a day … whether it's a tablet,

a gummy, or whatever."). Again, this comports with what other Class Members understood "One A Day" to mean (and what Defendants intended it to mean). *See*, *e.g.*, Roberts Decl. Exs. 5 at 37130, 6 at 40407, 7 at 40955, 8 at 55163, 10 at 43930, 11 at 60670, 12 at 24176; *see also* Klein Decl. ¶ 13. And Plaintiff testified she was "expecting to get the full benefits from the One A Day" but did not, meaning Plaintiff suffered the same harm as all other Class Members. Roberts Decl. Ex. 21 at 61:5-6; *see also id.* at 63:3-5 ("[O]n the gummies, it says, 'One A Day,' but actually, you need two, not one…"); *id.* at 114:8-10 ("[T]he way I interpret it was the gummies One A Day means 'One A Day' and I'm getting the full benefits of the vitamins."). Once more, this comports with the damages all Class Members are owed based on Defendants' false representations: half of the price of the One A Day Vitacraves Products.

Accordingly, Plaintiff is typical of the Class she seeks to represent because proving her claim will require the presentation of the same evidence (based on the same legal theories) as other Class Members. *See*, *e.g.*, *EZ Seed*, 304 F.R.D. at 406 ("[T]he lead plaintiffs' and absent class members' claims arise from the same course of events, and each class member will make similar legal arguments to prove defendants' liability."); *Ebin*, 297 F.R.D. at 565-66 ("Every tin was labeled '100% Pure Olive Oil' and every tin in fact contained pomace. Lead plaintiffs have been injured in the same manner as other class members."); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012) (typicality met where "the Men's Vitamin packages purchased by Plaintiffs and all class members prominently and repeatedly featured the identical 'supports prostate health' claim," and thus, "Plaintiffs and class members [] were all exposed to the same alleged misrepresentations on the packages and advertisement").

In their Opposition, Defendants will likely contend Plaintiff's claims are not typical because she ostensibly did not rely on the "One A Day" branding to make her purchase. Instead,

Defendants will say, Plaintiff took one gummy regardless of which brand she purchased, not because of the "One A Day" label.  As an initial matter, Plaintiff need not satisfy any reliance requirement for her GBL § 349 claim.  *EZ Seed*, 304 F.R.D. at 409 (noting "neither Section 349 nor 350 require proof of reliance").  For instance, in *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 30 (2000), the Appellate Division "dismissed plaintiffs' claim, holding that they failed to show … the note's failure to disclose the $275 attorney's fee had any effect on plaintiffs' decision to borrow from defendant in the first place."  (Cleaned up).  The Court of Appeals reversed, noting "there is a difference between reliance and causation":

> [h]ere, plaintiffs allege that because of defendant's deceptive act, they were forced to pay a $275 fee that they had been led to believe was not required.  In other words, plaintiffs allege that defendant's material deception caused them to suffer a $275 loss.  This allegation satisfies the causation requirement.  Plaintiffs need not additionally allege that they would not otherwise have entered into the transaction.  Nothing more is required.

*Id.*  The same is true here.  Plaintiff overpaid for the One A Day Vitacraves Products by 50% because of Defendants' misrepresentation that the serving size was one gummy.  Roberts Decl. Ex. 21 at 61:5-6, 63:3-5, 114:8-10.  That is sufficient for typicality.

Regardless, whatever Plaintiff did when it came to other vitamin brands—which, notably, are *not* called "__ A Day"—is irrelevant to how many gummies she took as a result of Defendants' misrepresentations.  The One A Day Vitacraves Products are the only brand that affirmatively tells consumers (what purports to be) the serving size on the front.  Roberts Decl. Ex. 1 at 43:10-15 ███████████████████████████████████████████████████  So, when it came to the One A Day Vitacraves Products, Plaintiff explicitly testified "on [Defendants'] bottle, it says 'One A Day.'  *So that's why I only took one of those*."  Roberts Decl. Ex. 21 at 101:1-2 (emphasis added); *Goldemberg v. Johnson & Johnson Consumer*

*Cos., Inc.*, 317 F.R.D. 374, 399 (S.D.N.Y. 2016) (Román, J.) ("Each Named Plaintiff indicated they purchased Active Naturals products based on a misunderstanding of what the Active Naturals brand provided."). Accordingly, Plaintiff's claims are typical of the Class because when it came to the "One A Day Vitacraves Products," she testified she took one gummy as a result of Defendants' misrepresentations.

### D.    Plaintiff Will Adequately Represent The Class

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Generally, adequacy of representation entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

### 1.    Plaintiff's Interests Do Not Conflict With The Interests Of The Class

Neither Plaintiff nor her counsel have any interest antagonistic to absent Class Members. Ms. Newman, like each absent Class Member, has a strong interest in proving Defendants' common course of conduct, establishing its unlawfulness, demonstrating the impact of the unlawful conduct, and obtaining redress. Ms. Newman has also demonstrated her commitment to pursue these claims on behalf of absent Class Members. She reviewed the Complaint, responded to written discovery requests, provided verified responses to interrogatories, sat for a deposition, produced documents, and kept in frequent contact with counsel regarding the status of the case. *See*, *e.g.*, Roberts Decl. Ex. 21 at 12:13-19, 13:7-20, 78:21-25, 79:19-21.

Further, Ms. Newman has standing to represent purchasers of any of the One A Day Vitacraves Products, not just purchasers of the One A Day Vitacraves Women's product she purchased. A class representative has class standing to represent purchasers of similarly situated products the representative did not purchase if he or she "(1) … personally has suffered some

actual [] injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (cleaned up).

Here, all of the One A Day Vitacraves Products are the same in all material respects—they contain the "One A Day" misrepresentation on the front and all serve the same purpose of being a daily multivitamin. Roberts Decl. Ex. 4. The differences between each of the products are immaterial—only the color of the packaging and whether they purport to be for men, women, adults, or children differs. *Id.* Thus, each of the One A Day Vitacraves Products implicates "the same set of concerns"—whether Defendants mispresented the serving size of the products. Under such circumstances, Ms. Newman has standing to represent these similarly situated purchasers and will adequately protect their interests. *See, e.g.*, *Nguyen v. Algenist LLC*, 2022 WL 17251733, at *4 n.2 (S.D.N.Y. Nov. 28., 2022) (finding the plaintiff had standing to represent purchasers of similar collagen products "because each contains Defendant's proprietary vegan collagen" and "each Product's label represents that its component collagen will produce advanced anti-aging benefits") (cleaned up); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 563 (S.D.N.Y. 2016) ("Although the unpurchased products may contain different ingredients compared to the purchased products, the Court finds that the Amended Complaint adequately alleges that the misrepresentation claimed with respect to the unpurchased products is sufficiently similar to the misrepresentation for the purchased products.") (cleaned up).

In its Opposition, Defendant is likely to bring up that Plaintiff was charged for a felony (robbery in the second degree) over a decade ago. As an initial matter, Plaintiff's criminal charge is long in her past. Roberts Decl. Ex. 21 at 169:1-3 ("So that was a long time ago. I did my time.

And since then, that's not who I am.  And I've been a very productive member of society.").  Any attempts to drag Plaintiff back into this chapter of her life should be ignored or met with disgust. Regardless, "a person who has been convicted of a crime is not, by virtue of that fact, forever disabled from acting as a class representative."  *Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 448 (S.D.N.Y. 2023).  This is especially true where, as here, Plaintiff's participation in a robbery (again, over a decade ago) did not involve "fraud or other forms of dishonesty or deception," and is the single criminal charge in Plaintiff's entire life.  *Id.* (rejecting arguments that plaintiff was an inadequate class representative where plaintiff "has a lengthy criminal history, including at least seven convictions spanning thirty-five years," but "are all from at least sixteen years ago and none appear to have required proof of any false statements"); *see also Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 137 (S.D.N.Y. 2007) (criminal history from more than ten years ago did not affect adequacy of class representative).  Plaintiff's lone criminal charge has no bearing on her adequacy.

### 2.    *Plaintiff's Counsel Are Qualified*

Plaintiff's counsel—Max S. Roberts, Caroline C. Donovan, and L. Timothy Fisher of Bursor & Fisher, P.A.—are class action lawyers who have extensive experience litigating consumer claims, including claims involving false or misleading advertising.  *See* Roberts Decl. Ex. 22.  "The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five [now six] class action jury trials since 2008."  *Ebin*, 297 F.R.D. at 566; *see also EZ Seed*, 304 F.R.D. at 407 (same). Accordingly, adequacy is met as to Plaintiff and her counsel.

### E.    **The Class May Be Objectively Ascertained**

In addition to the four cornerstones of Rule 23(a), the Second Circuit has also recognized an implied requirement of ascertainability, which "requires only that a class be defined using

19

objective criteria that establish a membership with definite boundaries." *In re Petrobas Securities*, 862 F.3d 250, 264 (2d Cir. 2017). "The standard for ascertainability is not demanding and is "designed only to prevent the certification of a class whose membership is truly indeterminable." *Ebin*, 297 F.R.D. at 567 (cleaned up). Moreover, although the membership of the class must be ascertainable "at some point in the case," it need not be determined prior to class certification. *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 341-42 (S.D.N.Y. 2004) (cleaned up).

Here, Class Members can be identified by reference to "objective criteria." The Class consists of all consumers who, within the applicable statute of limitations period, purchased in the State of New York any of Defendants' One A Day Vitacraves Product. There is nothing subjective about this Class definition; consumers either purchased the Product in New York during the relevant time period and are part of the Class, or did not.

Class Members can also be identified by reference to these criteria. Given many purchases are now made online, many consumers retain e-mail receipts reflecting their purchases. Indeed, Plaintiff herself has receipts for her online purchase. Roberts Decl. Ex. 20 at NEWMAN_000001-000003. And for those consumers lacking a receipt, courts have consistently held that ascertainability is met where "proof of purchase may need to be demonstrated by self-identifying affidavit." *Hasemann v. Gerber Prods. Co*, 331 F.R.D. 239, 271 (E.D.N.Y. 2019); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 539 (E.D.N.Y. 2017) (finding ascertainability requirement met in GBL case where class members were individuals defrauded by labels and marketing, noting that "[b]ecause it is unlikely that consumers will retain receipts, plaintiff may rely on affidavits for those without a receipt"); *Goldemberg*, 317 F.R.D. at 399 ("[T]he [c]ourt concludes that the implied ascertainability requirement of Rule 23 can, at minimum, be met on the basis of sworn statements indicating class members purchased the products at issue in the necessary state during

the necessary limitations period."); *EZ Seed*, 304 F.R.D. at 407 (finding despite a likely lack of proof of purchase, where "plaintiffs propose[d] classes consisting of New York and California purchasers of … packages containing the … claim," such proposals were "sufficiently specific to satisfy the ascertainability requirement"). Indeed, "[i]f proof of purchase was required to satisfy the ascertainability requirement, there would be no such thing as a consumer class action, especially with respect to low-cost products." *EZ Seed*, 304 F.R.D. at 407. Such a ruling would undermine the point of Fed. R. Civ. P. 23. Accordingly, ascertainability is met.

## II.   The Proposed Class Satisfies The Requirements Of Rule 23(b)(3)

Fed. R. Civ. P. 23(b)(3) authorizes class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are met here.

### A.   Common Questions Of Law Or Fact Predominate

The predominance inquiry "tests whether proposed class actions are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623-24. "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). Notably, Fed. R. Civ. P. 23(b)(3) calls only for "a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc.*, 568 U.S. at 459 (cleaned up). And, as the Second Circuit has noted:

> the Supreme Court has also instructed that Rule 23(b)(3) does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof … individual

> questions need not be absent. The text of Rule 23(b)(3) itself
> contemplates that such individual questions will be present. The
> rule requires only that those questions not predominate over the
> common questions affecting the class as a whole.

*Sykes*, 780 F.3d at 81 (cleaned up). Predominance is met here.

### 1. A GBL § 349 Claim Can Be Established Through Common Evidence

Plaintiff seeks certification of only her GBL § 349 claim, which requires her to demonstrate "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *EZ Seed*, 304 F.R.D. at 409. Resolution of these elements depends on common evidence that will answer the common questions: (i) whether Class Members understood "One A Day" to mean a serving size of one gummy per day; (ii) whether Defendants misrepresented the serving size of the One A Day Vitacraves Products; (iii) whether the serving size misrepresentation was material to Class Members; and (iv) whether Class Members overpaid for the One A Day Vitacraves Products as a result of Defendants' misrepresentations.

Further, proving the elements of Plaintiff's GBL § 349 claim will require reference to a misrepresentation ("One A Day") that was displayed prominently on the front of every bottle sold to every class member. Roberts Decl. Ex. 4. Finally, GBL § 349 claims do not "require proof of reliance." *EZ Seed*, 304 F.R.D. at 409 (citing *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012)); *see also Goldemberg*, 317 F.R.D. at 392 ("For claims brought under New York's GBL, it does not matter whether a plaintiff justifiably relied on the deception. And, to satisfy the causation requirement under the GBL, nothing more is required than that a plaintiff suffer a loss because of defendant's deceptive act.") (cleaned up).

"Plaintiff['s] GBL claim[] thus depend[s] on generalized evidence," meaning common questions predominate. *EZ Seed*, 304 F.R.D at 409 ("Classwide evidence will be used to establish

whether Scotts's labeling of EZ Seed was false, and if so, whether it was likely to mislead a reasonable consumer acting reasonably under the circumstances."); *Goldemberg*, 317 F.R.D. at 389 ("The product specific labeling and packaging claims … do not require proof as to individual understandings and can be judged based on the objective standard provided … [G]eneralized proof as to what message the packaging set conveys will satisfy the inquiry."); *Hasemann*, 331 F.R.D. at 274 ("Cases analyzing both FDUTPA and GBL claims support a finding that false advertising claims under both statutes meet the predominance requirement."); *Cabrera*, 2024 WL 1699357, at *8 (predominance met where "the class members were all exposed to the same representations" and "whether these representations were material to a reasonable person is a question of fact that can be adjudicated on a classwide basis").

### 2.    Damages Can Be Proved On A Common Basis

At class certification, Plaintiff must "establish[] that damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). Plaintiff's method for calculating damages on a classwide basis must be consistent with her theory of liability by "measur[ing] only those damages attributable to that theory." *Id.*

Plaintiff's damages theory is simple. Plaintiff and Class Members purchased a product labeled "One A Day" but with a serving size of two. Thus, if Plaintiff and Class Members took only one gummy each day, they were only getting half of the vitamin benefits the product promised. Further, for One A Day Vitacraves Products labeled with, say, "170 gummies," the product contained only 85 servings, meaning the Product lasted for half as many days as represented. Accordingly, Plaintiff is seeking, for herself and for all Class Members, "half of what [she] paid for the vitamins." Roberts Decl. Ex. 21 at 67:16-18. The Class's actual damages are thus approximately ████████, which constitutes half of the sales of the One A Day Vitacraves Products. Weir Decl. ¶ 9.

Plaintiff's "underfill" model of actual damages satisfies predominance and is "adequately tied to Plaintiff's theory of liability." *Martin v. Monsanto Co.*, 2017 WL 1115167, at *8 (C.D. Cal. Mar. 24, 2017) ("Plaintiff's theory of liability is that class members were harmed when Monsanto sold them Roundup Concentrates that did not make the number of gallons of solution promised when following the instructions on the back label … The 'underfill' percentage can be calculated by comparing the number of gallons made when following the instructions on the back label with the number of gallons promised on the neck label.").

On top of this, GBL § 349(h) allows consumer to recover "actual damages or fifty dollars, whichever is greater." Accordingly, if Plaintiff and Class Members establish liability, they are entitled to at least $50 in statutory damages. It cannot be "disputed that statutory damages … can be assessed on the basis of common proof, as they are capped at $50." *Skyes*, 780 F.3d at 87; *see also Famular v. Whirlpool Corp.*, 2019 WL 1254882, at *11 (same). Proof of statutory damages for Plaintiff's GBL § 349 claim will thus be very simple.[5]

As such, "Plaintiff['s] model survives the minimal scrutiny required under *Comcast* and Rule 23(b)(3) — [her] theory of liability matches [her] theory of damages and individualized damages issues will not predominate." *See Carpenters Pension Trust Fund v. Barclays PLC*, 2015 WL 5000849, at *21 (S.D.N.Y. Aug. 20, 2015).

### B.    Class Litigation Is Superior To Other Methods Of Adjudication

To determine superiority, the Court considers:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability

---

[5] As noted above, Defendants sold approximately at least ▮▮▮▮▮▮ One A Day Vitacraves Products in New York during the class period. *See* Weir Report ¶ 9. Thus, statutory damages can be calculated as: ▮▮▮▮▮ units × $50 per unit = ▮▮▮▮▮▮.

or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of the class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

All four of these factors favor class treatment here. *First*, it would cost Class Members much more to litigate an individual case than they could recover in damages. Thus, when as here, "proceeding individually would be prohibitive for class members with small claims … the class action device is frequently superior to individual actions." *See Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010); *see also Goldemberg*, 317 F.R.D. at 397 ("Consumer class actions of this variety, designed to recover relatively small price premiums in comparison to the expense and burden of litigation, are clearly superior to the alternative of forcing consumers to litigate on principle."). *Second*, although prior cases have been commenced against Defendants under this theory, none are currently pending and all were proposed class actions. *Third*, "there is no reason why the litigation should not be concentrated in this forum." *EZ Seed*, 304 F.R.D. at 415. *Finally*, this case is manageable as a class action because liability will be established predominantly through common classwide proof. *Id.* ("[A]ny concerns about manageability rely, almost entirely, on a premise the Court has already rejected—namely, that innumerable individualized inquiries will swallow common ones.") (cleaned up).

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests the Court grant her motion to certify the Class, appoint Plaintiff as representative of the Class, and appoint Max S. Roberts, Caroline C. Donovan, and L. Timothy Fisher of Bursor & Fisher, P.A. as class counsel.

Dated: July 19, 2024

Respectfully submitted,

By: */s/ Max S. Roberts*
     Max S. Roberts

**BURSOR & FISHER, P.A.**
Max S. Roberts
Caroline C. Donovan
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: mroberts@bursor.com
      cdonovan@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*Pro Hac Vice*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: ltfisher@bursor.com

*Proposed Class Counsel*