UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

TANYSHA NEWMAN, *individually and on behalf of all others similarly situated,*

                        Plaintiff,                  **DECISION AND ORDER**

       -against-                                  22 Civ. 7087 (KMK) (AEK)

BAYER CORPORATION, *et al.,*

                        Defendants.

-------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

      Plaintiff Tanysha Newman brings this case individually, and on behalf of all others similarly situated, asserting claims for breaches of express and implied warranties, deceptive trade practices, false advertising, and fraud against Defendants Bayer Corporation and Bayer Healthcare LLC (collectively, "Defendants"), based on the alleged mislabeling of their "One A Day" chewable supplements, which, according to the complaint, require consumers to take two or more supplements per day in order to get the full nutritional benefit. ECF No. 1 (Complaint). Before the Court is Defendants' letter motion to compel the production of the responses to, and data from, a survey designed by one of Plaintiff's experts. ECF No. 82 ("Defs.' Mot."). Plaintiff opposes the motion—she maintains that the expert never "considered" the information sought by Defendants, and therefore production is not required. ECF No. 83 ("Pl.'s Opp.").

      For the reasons set forth below, the motion to compel is DENIED.

## BACKGROUND

      Plaintiff retained an expert, Robert Klein, to test whether consumers were confused by the name of Defendants' One A Day gummy multivitamins. *See* Defs.' Mot. Ex. A ("Klein

Dep.") at 21:8-14.[1]  Klein designed an initial survey for this purpose.  At his deposition, Klein testified that he ran the initial survey, got the results, and then "we"—which appears to be a reference to Klein's colleagues at Applied Marketing Services, Inc. ("AMS")—tabulated the results.  Klein Dep. at 77:22-78:4.  After the first survey was conducted, however, Plaintiff's counsel asked Klein to conduct a second survey to address feedback from Plaintiff's economic expert.  *See id.* at 78:5-11 ("There was some discussion as to how well that survey fit with the economist's calculation when he wanted to make them.  And so, we constructed the second survey to better fit what he perceived his needs to be in the matter."), 80:9-16, 312:24-313:2 ("Q. So counsel knew the results in the first survey, and then counsel asked you to do the second survey, right?  A.  I believe that's correct.  Yes.").[2]  Klein relied on the results of the second survey to form the basis of his expert opinion.  *Id.* at 319:19-25.

Defendants demanded the production of documents and information regarding the first survey, in particular the results and underlying data for Q3 – Q6.  Defs.' Mot. at 2.  Plaintiff states that she has provided Defendants with: (i) the original survey instrument, which Klein was involved in drafting, *see* Pl.'s Opp. at 1; (ii) the percentages of survey respondents in the test and control groups who believed the bottle lasted for "150 days" and the net difference between these percentages, information that Klein learned during a telephone call with AMS personnel, *see id.* & ECF No. 83-1 ("Klein Decl.") ¶ 6; and (iii) the total number of people who took the first

---

[1] Klein testified that paragraph 11 of his report states, "I was asked by counsel for Plaintiff to design, conduct, and analyze a market research survey to determine whether a significant number of the relevant consumers are misled by the gummies, One A Day name, by understanding how many gummies they think are in a serving size."  Klein Dep. at 21:9-14.

[2] When asked whether he told Plaintiff's counsel the results of the first survey, Klein responded, "I think my colleagues did."  Klein Dep. at 312:21-23.

survey, which, according to Plaintiff's counsel, Klein never knew, *see* Pl.'s Opp. at 1 (citing Defs.' Mot. Ex. C at p. 6). But Plaintiff maintains that any further production is not warranted.

## DISCUSSION

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure provides that an expert witness must disclose "the facts or data considered by the witness in forming" his or her opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii). "[E]ven if the expert avers under oath that he [or she] did not actually consider certain materials in forming his [or her] opinion, that will not control, and instead courts apply an objective test that defines 'considered' as any facts or data on the subject matter learned by the expert at any time before rendering his [or her] opinion." *Seawolf Tankers Inc. v. Laurel Shipping LLC*, No. 20-cv-5198 (JHR) (SDA), 2024 WL 532397, at *4 (S.D.N.Y. Feb. 9, 2024) (cleaned up). The word "considered" has been interpreted by courts to mean "anything received, reviewed, read, or authored by the expert, before or in connection with the forming of his [or her] opinion, if the subject matter relates to the facts or opinions expressed." *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 470 (S.D.N.Y. 2016) (quotation marks omitted). "The burden of showing that an expert did not consider certain documents in forming his [or her] opinion rests with the party resisting the disclosure." *Thieriot v. Jaspan Schlesinger Hoffman LLP*, No. 07-cv-5315 (TCP) (AKT), 2011 WL 4543308, at *4 (E.D.N.Y. Sept. 29, 2011). "Although an expert's representation as to whether or not he [or she] considered a document is not controlling, his [or her] testimony that he [or she] did not receive, read, review or author a document will negate discovery absent persuasive evidence to the contrary." *Id.* (quotation marks omitted). "The burden can be met when the party opposing disclosure provides the court with affidavits and deposition testimony clearly establishing that the testifying witness never read, reviewed, or

considered the subject documents in forming his [or her] opinions." *Id.* (quotation marks omitted).

Defendants cite Klein's deposition testimony that he "got the results" from the first survey and "tabulated" and "analyzed" them as demonstrating that he considered the results and data obtained from the first survey. *See* Defs.' Mot. at 3 (citing Klein Dep. at 69:15-23, 82:7-11, 319:10-18). But Klein's deposition testimony is not as clear as Defendants make it out to be; rather, it is equivocal at best in establishing Klein's personal involvement in reviewing and analyzing the results of the first survey. Klein's references to what was done after the first survey was conducted are most plausibly understood to be references to work performed by Klein's colleagues, not Klein himself. Thus, when he was asked, "[d]id you analyze the data," Klein responded, "*[w]e* tabulated, yes." Klein Dep. at 82:10-11 (emphasis added); *see also id.* at 69:15-20 ("Q. And you got the results for that survey, correct? A. Yes. Q. And you analyzed the results of that survey, right? A. *We* tabulated. Yes.") (emphasis added). This is consistent with the declaration that Klein submitted in connection with this motion, where he described the process more fully: "[a]fter the survey instrument was finalized, other employees of AMS carried out the survey while I was 'walled off' from the process. That means that I was not presented with or shown any individual responses to the survey (the underlying survey data) as they came in and would not be shown these responses unless and until the responses were finalized and the results were to be utilized." Klein Decl. ¶ 4.

Other deposition testimony cited by Defendants is also unclear when read in context. For example, when Klein was asked whether he had any opinions when he got the results of the first survey, Klein responded, "I'm not sure how to answer that question. I, you know, calculate the results and share them." Klein Dep. at 81:1-5. This testimony does not indicate that Klein

4

himself calculated and shared the results of the first survey. Similarly, Klein's statement that he recalled that "there was [sic] different kinds of answers that people gave relative to how long will the bottle last that were, you know, unconnected to the issue of serving size," *id.* at 80:5-8, does not make "clear" that Klein "saw individualized responses to the first survey," Defs.' Mot. at 1. Finally, while Defendants contend that Klein "used this first survey as a 'benchmark' for understanding the results of his second survey," *id.*, Klein's testimony was that "[t]he first survey gave results that made it worth looking at the second survey," and when asked whether he "considered the first survey as a benchmark in deciding that the second survey was okay," Klein responded, "[n]ot sure whether the benchmark [sic] or not, but the second survey was what we decided to base my opinion on." Klein Dep. at 319:17-25.

Defendants contend that any ambiguities in Klein's testimony should be resolved in favor of disclosure. *See* Defs.' Mot. at 2 (quoting *Euclid Chem. Co. v. Vector Corrosion Techs., Inc.*, No. 05-cv-80, 2007 WL 1560277, at *4 (N.D. Ohio May 29, 2007) (footnote omitted)). But Klein later testified explicitly that he did not ever read any of the individual responses to the first survey; did not ever receive those responses either by email or in a document; did not review those responses; and did not ever analyze any of those responses. Klein Dep. at 305:2-14. Klein added that the responses from the first survey were neither considered in any way nor relied upon in drafting the opinions in his report. *Id.* at 305:15-21[3]; *see also id.* at 80:18-20 ("Q. Did you form any opinions based upon the results of that first survey? A. No.").

Moreover, Klein's declaration unambiguously reinforces that he never received, reviewed, or read those responses, nor did he generate any data related to the survey responses.

---

[3] While Defendants attempt to dismiss this testimony as a "rehearsed redirect," the reality is that Klein's testimony on these points was straightforward, and Defendants do not contend, nor is there any basis to conclude, that Klein was not being truthful.

5

*See* Klein Decl. ¶ 5 ("I never saw, read, reviewed, looked at, observed, analyzed, reflected upon, or used the underlying survey data from the first survey. I have also confirmed after going through my e-mail inbox, that I was never even sent the underlying survey data such that I was never in possession of it. Likewise, I did not generate any of the underlying survey data, as this was data provided solely by survey respondents."). Thus, this case is unlike *Robocast, Inc. v. Apple, Inc.*, Nos. 11-cv-235 (RGA), 10-cv-1055 (RGA), 2013 WL 12155813 (D. Del. Sept. 18, 2013), *adopted by* 2013 WL 12156411 (D. Del. Oct. 17, 2013), cited by Defendants, in which the plaintiff was ordered to produce both the questions and answers to prior surveys commissioned by the plaintiff's expert. There, even though the expert had deleted the prior surveys from his computer, did not recall them, and claimed that he did not rely upon them in reaching the conclusions in his final reports, the special master ordered disclosure because the expert had "generated information as a result of the prior surveys," and "[w]hen the information was generated, it is implausible that the expert didn't review it and that he didn't reflect upon it at least to a certain extent." 2013 WL 12155813, at *3. The inference drawn by the special master in *Robocast* would not be appropriate in light of the record here—Klein has no connection to the requested information, and the underlying data from the first survey was not part of Klein's final expert analysis.

To the extent that Defendants seek production of the responses from the first survey, or further discovery from the AMS personnel who were involved in Klein's expert work, on the ground that Klein should not be permitted to "hide behind" his staff and "conceal data" they reviewed, Defs.' Mot. at 3, the case law that Defendants cite is inapposite. At issue in *Lee Valley Tools, Limited v. Industrial Blade Co.*, 288 F.R.D. 254 (W.D.N.Y. 2013), was the defendant's motion to strike the report of the plaintiffs' damages expert because, among other reasons, the

6

expert's colleague conducted the analysis and drafted the report, and the expert "merely edited, embellished and finalized" it.  *Id.* at 262.  The court denied the motion, finding that the expert "directly participated in the analysis underlying his expert report," even though he relied upon his colleague "to conduct some verification of the underlying data and to draft the initial report[.]"  *Id.* at 266.  The court ruled that the defendant was, however, entitled "both to obtain the underlying data and to depose" the colleague because the expert "was generally unfamiliar with" his colleague's verification work.  *Id.*

Similarly, *Derrickson v. Circuit City Stores, Inc.*, No. 95-cv-3296 (DKC), 1999 WL 1456538 (D. Md. Mar. 19, 1999), *aff'd sub nom. Johnson v. Circuit City Stores, Inc.*, 203 F.3d 821 (4th Cir. 2000) (*per curiam*), involved a motion *in limine* filed by the defendant, seeking to exclude the report of the plaintiff's expert on the ground that the plaintiff failed to produce the underlying data analysis performed by the expert's assistant.  The court noted that the expert and his assistant "worked hand-in-glove, and the fruits of their labor are indivisible."  1999 WL 1456538 at *7.  Therefore, the defendant would not have been able to "properly cross-examine [the expert] without first understanding how his assistant manipulated the data."  *Id.*  Because the expert's opinions were "the result of a seamless collaboration with his assistant," "[d]efendant [was] entitled to know what [the expert's] assistant did."  *Id.*  The court ordered the plaintiff to "disclose the details of any analysis performed and supporting documentation created by [the expert's] assistants [*sic*] in the course of preparing [the expert's] report and testimony[.]"  *Id.* at *9.

Here, in contrast, any tabulation of the responses to the first survey performed by Klein's colleagues was not communicated in any way to Klein, other than the top line numbers that have already been disclosed to Defendants.  *See* Klein Decl. ¶ 7 ("No other 'top-line' numbers were

provided to me, and neither I nor any employee at AMS analyzed, filtered, or finalized the underlying survey data. I also did not personally tabulate or review any of the individual survey responses, and I never received any sort of document regarding the 'top-line' numbers—either summarizing or giving an overview of the results, or even just listing out what the results were."). Furthermore, there is no evidence that these responses were used by either Klein or his colleagues as the basis for Klein's report, or relied upon by Klein in any way in drafting his report. In both *Lee Valley Tools* and *Derrickson*, the information that was ordered to be produced was, without question, integral to the preparation of the expert reports at issue, and the roles of the colleagues and/or support personnel was so deeply intertwined with the final expert reports that it would have frustrated the purposes of Rule 26 to limit the scope of expert discovery based on the artificial distinction between the "named" testifying experts and their collaborators. For the reasons set forth above, the record here is quite different, and does not establish Defendants' entitlement to the disclosure of the responses to the first survey, or to further disclosures regarding, or depositions of, the AMS staff to attempt to get at the underlying data in that way.

*   *   *   *   *   *

In sum, Plaintiff has carried her burden of "clearly establishing," through Klein's deposition testimony as well as his sworn declaration, that Klein did not consider—*i.e.*, "did not receive, read, [or] review"—the underlying survey data from the first survey in forming his expert opinion in this case, and Defendants have not produced any "persuasive evidence to the contrary." *See Thieriot*, 2011 WL 4543308, at *4 (quotation marks omitted). Accordingly, the information sought by Defendants in their motion to compel is "outside the scope of Rule 26(a)(2)(B)," *id.*, and production is not required.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to compel, ECF No. 82, is DENIED.

The Court's understanding is that Plaintiff has consented to a second deposition of Klein, not to exceed two hours, to address Plaintiff's post-deposition disclosures of "everything Mr. Klein was shown or heard related to the prior survey." Pl.'s Opp. at 3. Any further deposition must be completed by January 10, 2025. By no later than January 15, 2025, the parties must submit a letter to the undersigned via ECF either to confirm that all discovery has been completed or to identify any final outstanding issues.

Dated: December 2, 2024
       White Plains, New York

                              **SO ORDERED.**

                              ANDREW E. KRAUSE
                              United States Magistrate Judge