UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TANYSHA NEWMAN, *individually and on
behalf of all others similarly situated*,

                                    *Plaintiff*,

        v.

BAYER CORPORATION, *and* BAYER
HEALTHCARE LLC,

                                    *Defendants*.

No. 22-CV-7087 (KMK)

OPINION & ORDER

<u>Appearances</u>:

L. Timothy Fisher, Esq.
Bursor & Fisher, P.A.
Walnut Creek, CA
*Counsel for Plaintiff*

Max Stuart Roberts, Esq.
Caroline Cella Donovan, Esq.
Bursor & Fisher, P.A.
New York, NY
*Counsel for Plaintiff*

Jonathan F. Cohn, Esq.
Shannon Grammel, Esq.
Jacob B. Richards, Esq.
Lehotsky Keller Cohn LLP
Washington, DC
*Counsel for Defendants*

Katherine Yarger, Esq.
Lehotsky Keller Cohn LLP
Denver, CO
*Counsel for Defendants*

Alexis Swartz, Esq.
Lehotsky Keller Cohn LLP
Austin, TX
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Plaintiff Tanysha Newman ("Plaintiff") brings this putative class action against Bayer Corporation and Bayer Healthcare, LLC (collectively, "Bayer" or "Defendants"), alleging that the labeling on Defendants' "gummy" or "chewable" line of One A Day supplements (the "Product") is deceptive and misleading. (*See generally* Compl. (Dkt. No. 1).)  Plaintiff brings claims for damages against Defendants for (1) common law breach of express warranty; (2) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, and (3) violations of Sections 349 and 350 of the New York General Business Law ("GBL"), N.Y. Gen. Bus. Law §§ 349, 350. (*See id.* ¶¶ 42–72.)  Before the Court is Plaintiff's Motion for Class Certification (the "Motion"), (Not. of Mot. (Dkt. No. 69)), and Defendants' Objection to Magistrate Judge Krause's Order Denying a Letter Motion to Compel Production (the "Objection").  For the foregoing reasons, Defendants' Objection is overruled and Plaintiff's Motion is granted.

## I.  Background

The Court assumes familiarity with the facts of this case and addresses only those necessary to decide the instant Motion and Objection.  Defendants sell a line of vitamin supplements under the "One A Day" brand.  (*See* Compl. ¶¶ 1–2.)  Plaintiff alleges that

> Defendants' claim behind their One A Day line of supplements . . . that the consumer need only consume one supplement per day to get the full nutritional benefit . . . may be true of Defendants' capsule supplements, [but] . . . is not true for their "gummies" or chewable line . . ., which require the consumer to take two or more supplements per day to get the full nutritional benefit.

(*Id.* ¶ 1.)  According to Plaintiff, consumers are misled by the Product's front label packaging, which lists the number of gummies in each bottle and prominently displays the "One A Day" brand name.  (*See id.* ¶¶ 3, 20–23.)

On September 28, 2023, the Court granted in part and denied in part Defendant's Motion to Dismiss; specifically, the Court granted the motion with respect to Plaintiff's claim of

common law fraud but denied the motion with respect to all other claims.  (*See* Dkt. No. 27 at 25.)  On July 19, 2024, Plaintiff filed the instant Motion for Class Certification.  (*See* Not. of Mot.; Mem. in Supp. of Pl's Mot. ("Pl's Mem.") (Dkt. No. 74); Decl. of Max S. Roberts ("Roberts Decl.") (Dkt. No. 75); Decl. of Robert L. Klein ("Klein Rpt.") (Dkt. No. 72); Decl. of Colin B. Weir ("Weir Decl.") (Dkt. No. 76).)  After an extension, (*see* Dkt. No. 79), Defendants filed their Opposition on September 13, 2024.  (*See* Mem. in Opp. to Pl's Mot. ("Defs' Opp.") (Dkt. No. 85); Decl. of Jonathan F. Cohn ("Cohn Decl.") (Dkt. Nos. 86–87).)  On October 10, 2024, Plaintiff replied.  (*See* Reply Mem. in Supp. of Pl's Mot. ("Pl's Reply") (Dkt. No. 92); Rebuttal Decl. of Robert L. Klein ("Klein Rebuttal") (Dkt. No. 94).)

In the midst of briefing on class certification, the Parties engaged in a discovery dispute. Plaintiff retained an expert, Robert L. Klein, "to design, conduct, and analyze a market research survey to determine whether a significant number of the relevant consumers were misled by . . . Defendants' One A Day name by understanding how many gummies they think are in a serving size." (Klein Rpt. ¶ 11.)  Klein and his team ran two surveys and Klein relied on the results of the second survey to form the basis of his expert opinion.  (*See* Mot. to Compel Order (Dkt. No. 99) 2.)  Defendants discovered the existence of the first survey at Klein's deposition, after which Plaintiff produced the first survey instrument and "top[-]line" figures but refused to produce the underlying responses and data.  (*See* Dkt. No. 82 at 2.)  On August 30, 2024, Defendants filed a letter Motion to Compel production of the responses to, and data from, the first survey.  (*See generally id.*)  The same day, Plaintiff responded in opposition.  (*See* Dkt. No. 83.)  On December 2, 2024, Judge Krause issued an order (the "Order") denying Defendants' Motion to Compel.  (*See* Mot. to Compel Order.)  On December 16, 2024, pursuant to Federal Rule of Civil Procedure 72(a), Defendants filed their Objection to the Order.  (*See*

Defs' Objections to Non-Dispositive Order ("Defs' Obj.") (Dkt. No. 100).)  On December 30,

2024, Plaintiff filed a response.  (*See* Pl's Resp. to Defs' Obj. ("Pl's Resp.") (Dkt. No. 104).)  On

January 6, 2025, Defendants filed a reply.  (*See* Defs' Reply in Supp of Obj. (Dkt. No. 109).)

## II.  Discussion

### A.  Rule 72 Objection

Defendants object to the Order as contrary to Rule 26(a)(2).  (*See generally* Defs' Obj.)

Plaintiff responds that the Order is not clearly erroneous and that her withholding of documents

is in accordance with her discovery obligations.  (*See generally* Pl's Resp.)  Defendants request

that the Court set aside the Order, compel production of the first survey's data and responses and

the names of Klein's employees who reviewed and tabulated that data, and permit Defendants to

conduct a deposition.  (Defs' Obj. 16.)  For the reasons discussed below, the Court overrules

Defendants' Objection.

#### 1.  Standard of Review

"A district court reviewing a decision from a magistrate judge addressing a dispositive

motion 'may accept, reject, or modify, in whole or in part, the findings or recommendations

made by the magistrate judge.'"  *GlobalFoundries U.S. Inc. v. Int'l Bus. Machines Corp.*,

No. 23-CV-3348, 2024 WL 4452146, at *2 (S.D.N.Y. Oct. 9, 2024) (quoting 28 U.S.C.

§ 636(b)(1)).  However, "[u]nder Rule 72 of the Federal Rules of Civil Procedure, 'when a

pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to

hear and decide,' the district court 'must consider timely objections and modify or set aside any

part of the order that is clearly erroneous or is contrary to law.'"  *Michelo v. Nat'l Collegiate*

*Student Loan Tr. 2007-2*, Nos. 18-CV-1781, 18-CV-7692, 2022 WL 153183, at *2 (S.D.N.Y.

Jan. 18, 2022) (alteration adopted).  "Orders involving discovery are considered nondispositive."

*Pac. Life Ins. Co. v. Bank of New York Mellon*, 571 F. Supp. 3d 106, 112 (S.D.N.Y. 2021). "'An order is clearly erroneous only when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed' and is 'contrary to law if it fails to apply or misapplies relevant statutes, case law[,] or rules of procedure.'" *Id.* (quoting *Blackrock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14-CV-10067, 2018 WL 3863447, at *3 (S.D.N.Y. Aug. 13, 2018)) (internal quotation marks omitted). Because "'[a] magistrate judge is best qualified to judge the entire atmosphere of the discovery process,'" his "'rulings on discovery matters are entitled to substantial deference.'" *Michelo*, 2022 WL 153183, at *2 (quoting *U2 Home Entm't Inc. v. Hong Wei Int'l Trading Inc.*, No. 04-CV-6189, 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007)). The party objecting to a magistrate judge's order carries a "heavy burden" of showing that the order is clearly erroneous or contrary to law. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 336 F.R.D. 400, 404 (S.D.N.Y. Aug. 13, 2020).

Federal Rule of Civil Procedure 26(a) governs the disclosure of expert testimony. Specifically, Rule 26(a)(2)(B)(ii) provides that an expert witness must disclose "the facts or data considered by the witness in forming" his opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii). The Advisory Committee Notes to the 2010 Amendments clarify that the refocus[ing]

> of disclosure on "facts or data" is meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel. At the same time, the intention is that "facts or data" be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data "considered" by the expert in forming the opinions to be expressed, not only those relied upon by the expert.

*Seawolf Tankers Inc. v. Laurel Shipping LLC*, No. 20-CV-5198, 2024 WL 532397, at *4 (S.D.N.Y. Feb. 9, 2024) (emphasis omitted) (quoting Fed. R. Civ. P. 26, Adv. Comm. Notes, 2010 amend.). "The courts have embraced an objective test that defines 'considered' in Rule

26(a)(2)(B)(ii) as anything received, reviewed, read, or authored by the expert, before or in

connection with the forming of his opinion, if the subject matter relates to the facts or opinions

expressed." *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 470 (S.D.N.Y. 2016)

(alterations adopted) (quoting *Euclid Chem. Co. v. Vector Corrosion Techs., Inc.*, No. 05-CV-80,

2007 WL 1560277, at *4 (N.D. Ohio May 29, 2007)); *see also Seawolf Tankers*, 2024 WL

532397, at *4 (noting that the objective test applies "[e]ven if the expert avers under oath that he

did not actually consider certain materials in forming his opinion"). "The burden of showing that

an expert did not consider certain documents in forming his opinion rests with the party resisting

disclosure." *Thieriot v. Jaspan Schlesinger Hoffman LLP*, No. 07-CV-5315, 2011 WL 4543308,

at *4 (E.D.N.Y. Sept. 29, 2011) (citing *Schwab v. Philip Morris USA, Inc.*, No. 04-CV-1945,

2006 WL 721368, at *3 (E.D.N.Y. Mar. 20, 2006)). "This burden cannot generally be satisfied

merely by counsel's representations or by the expert's representations alone." *Sec. & Exch.*

*Comm'n v. Rio Tinto PLC*, No. 17-CV-7994, 2021 WL 2186433, at *5 (S.D.N.Y. May 28, 2021)

(alterations adopted) (internal quotation marks omitted) (quoting *Schwab*, 2006 WL 721368, at

*3). "[T]he burden may be satisfied when the party opposing disclosure presents the court with

affidavits and depositions testimony clearly establishing that the testifying witness never read,

reviewed, or considered the subject documents in forming his opinions." *Id.* (quotation marks

omitted) (quoting *Schwab*, 2006 WL 721368, at *3).

    2.  Analysis

    Defendants argue that Klein's deposition testimony is unambiguous that he viewed and

analyzed data from the first survey.  (Defs' Obj. 6–7.)  Not so.  An excerpt from the transcript is

illustrative:  "Q:  And you got the results for that survey, correct?  A:  Yes.  Q:  And you

analyzed the results of that survey, right?  A:  We tabulated.  Yes."  (Decl. of Max. S Roberts

("Roberts Decl."), Ex. 1 ("Klein Dep. Tr.") (Dkt. No. 105-1) at 69:15–20.)  The confusion stems from defense counsel's use of "you" and Klein's use of "we"—it is not clear that Klein takes "you" as referring to him individually, as opposed to referring to his team collectively. Relatedly, when Klein responds that "we" did something, it is unclear who Klein is saying performed the activity in question:  just Klein, the team as a whole including Klein, or the team excluding Klein.

Klein submitted a declaration in opposition to Defendant's letter motion before Judge Krause.  (*See* Decl. of Robert L. Klein ("Klein Decl.") (Dkt. No. 83-1).)  While Klein's deposition testimony becomes clearer when read in context with his declaration, Defendants argue that Klein's declaration contradicts his deposition testimony such that it is not credible and should be disregarded.  (Defs' Obj. 8–10.)  The Court agrees with Judge Krause that Klein's testimony "is consistent with [his] declaration" and that, together, they "reinforce[] that [Klein] never received, reviewed, or read [the first survey] responses, nor did he generate any data related to the survey responses."  (Mot. to Compel Order 4–5.)  Defendants pivot and assert that the testimony and declaration create an ambiguity that weighs in favor of disclosure.  (*See* Defs' Obj. 8–10.)  Defendants cite in support *Robocast, Inc. v. Apple, Inc.*, an out-of-circuit case where a special master ordered plaintiff to produce questions and answers to prior surveys commissioned by plaintiff's expert because, in part, "it is implausible that the expert didn't review [the results] and that he didn't reflect upon it at least to a certain extent."  No. 11-CV-235, 2013 WL 12155813, at *3 (D. Del. Sept. 18, 2013).  Judge Krause correctly distinguished the instant situation from that of *Robocast*, as Klein avers that he "never saw, read, reviewed, looked at, observed, analyzed, reflected upon, or used the underlying survey data from the first survey."  (Klein Decl. ¶ 5.)

Finally, Defendants argue that Klein should not be allowed to "hide behind" his staff in avoiding Rule 26 disclosure. (Defs' Obj. 10–15.) Defendants' cases cited in support are inapposite. In *Derrickson v. Circuit City Stores, Inc.*, the court noted that the expert and his non-testifying assistant "worked hand-in-glove, and the fruits of their labor are indivisible." No. 95-CV-3296, 1999 WL 1456538, at *7 (D. Md. Mar. 19, 1999), *aff'd sub nom. Johnson v. Cir. City Stores, Inc.*, 203 F.3d 821 (4th Cir. 2000). Judge Krause correctly pointed out that the working relationship between Klein and his team is different; Klein was "walled off" from the survey collection process and any work performed by the team, other than the "top-line" numbers, was not communicated to Klein. (*See* Mot. to Compel Order 4–8; Klein Decl. ¶¶ 4–7.) In *Lee Valley Tools, Ltd. v. Industrial Blade Co.*, the court held that defendant was entitled to "obtain the underlying data and to depose" the expert's assistant because the expert "was generally unfamiliar with the details of" the assistant's work. 288 F.R.D. 254, 266 (W.D.N.Y. Jan. 29, 2013). Again, here Klein "did not consider or rely on the first survey in coming to the conclusions laid out in [his] report." (Klein Decl. ¶ 3.) Klein's team's work on the first survey, then, was not incorporated into the report as was the case in *Lee Valley*. Defendants' remaining cases are either inapposite, out-of-circuit, or both.[1] Finally, Defendants' assertion that Klein and

---

[1] *See Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 612–15 (7th Cir. 2002) (affirming a district court's striking assistants' affidavits where the assistants were essentially experts in fields different from that of the expert and the affidavits were untimely); *Herman v. Marine Midland Bank*, 207 F.R.D. 26, 30–32 (W.D.N.Y. 2002) (relying on *Derrickson*, holding that the efforts of the expert and assistant were indivisible and ordering deposition of the assistant); *Long-Term Cap. Holdings, LP v. United States*, No. 01-CV-1290, 2003 WL 21269586, at *3 (D. Conn. May 6, 2003) (same); *Interface Grp. – Nev., Inc. v. Men's Apparel Guild in Cal., Inc.*, No. 04-CV-351, 2006 WL 8441913, at *4 (D. Nev. Jan. 3, 2006) (ordering deposition of an assistant who "performed more than routine or ministerial tasks" and was qualified "to render expert opinions"); *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, No. 97-CV-6124, 2002 WL 15652, at *5-6 (S.D.N.Y. Jan. 7, 2002) (discussing expert disclosure as it relates to attorney-client privilege); *Sher v. Raytheon Co.*, No. 08-CV-889, 2010 WL

his staff cherry-picked results does not hold water.  Assuming that, for Rule 26 purposes, "consider" includes data "on the subject matter learned by the expert at any time before rendering his opinion," *Seawolf Tankers*, 2024 WL 532397, at *4, Plaintiffs have already disclosed what Klein "learned"—namely, the "top-line" numbers and the first survey instrument, (*see* Klein Decl. ¶¶ 6, 8).  Plaintiffs, therefore, have met their Rule 26 disclosure obligation.

At bottom, Defendants have not carried their "heavy burden" in demonstrating that Judge Krause's Order was either clearly erroneous or contrary to law.  While they read Klein's deposition testimony and declaration as contradictory, Judge Krause reasonably and carefully concluded the opposite.  Accordingly, Defendants' Objection is overruled.

B.  Class Certification

    1.  Standard of Review

Class certification is governed by Federal Rule of Civil Procedure 23.  Rule 23(a) provides that the party seeking certification must establish that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class.  *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 159 (S.D.N.Y. 2014) (citing Fed. R. Civ. P. 23(a)).  These four factors are referred to as numerosity, commonality, typicality, and adequacy, respectively.  *Id; see also Kronenberg v. Allstate Ins. Co.*, 743 F. Supp. 3d 465, 479 (E.D.N.Y. 2024) (same).  "A class may be certified only if, 'after a rigorous analysis,' the [C]ourt is satisfied that the prerequisites of Rule 23(a) are met."  *Woodhams v. GlaxoSmithKline Consumer*

---

11507787, at *2-3 (M.D. Fla. Aug. 13, 2010) (ordering disclosure of case studies that the expert explicitly relied upon in his report).

*Healthcare Holdings (US) LLC*, No. 18-CV-3990, 2024 WL 1216595, at \*9 (S.D.N.Y. Mar. 21, 2024) (alterations adopted) (quoting *Road v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013))).

In addition to Rule 23(a) factors, the representative party also must show that the action is appropriate for one of the three reasons set forth in Rule 23(b). *See id.* Here, Plaintiff seeks certification under Rule 23(b)(3), and so Plaintiff must also show that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ P. 23(b)(3). These two factors are referred to as predominance and superiority, respectively. *See Polvay v. FCTI, Inc.*, 713 F. Supp. 3d 1, 5 (S.D.N.Y. 2024). Finally, the Second Circuit "[has] recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be readily identifiable, often characterized as an ascertainability requirement." *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017) (quotation marks omitted) (quoting *Sandusky Wellness Ct., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 995 (8th Cir. 2016)). Thus, a representative party need only show "the existence of objective criteria that establish a membership with definite boundaries." *In re Actos Antitrust Litig.*, No. 13-CV-9244, 2024 WL 4251891, at \*17 (S.D.N.Y. Aug. 9, 2024) (citing *Petrobras*, 862 F.3d at 269 n.20), *report and recommendation adopted*, 2024 WL 4345568 (S.D.N.Y. Sept. 30, 2024). The party seeking class certification must establish by a preponderance of the evidence that it has met each of the relevant Rule 23 requirements. *See In re Initial Public Offerings Sec. Litig. ("IPO")*, 471 F.3d 24, 37–38 (2d Cir. 2006) (citation omitted); *Woodhams*, 2024 WL 1216595, at \*9 (citing *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015)).

"Class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 444 (S.D.N.Y. 2023) (alteration adopted) (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990), *abrogated on other grounds by Microsoft Corp. v. Baker*, 582 U.S. 23 (2017)); *see also Bowling v. Johnson & Johnson*, No. 17-CV-3982, 2019 WL 1760162, at *4 (S.D.N.Y. Apr. 22, 2019) (noting that the issue of unique defenses is "relevant to both Rule 23's typicality and adequacy of representation requirements" (citation omitted)).  However, "the mere existence of individualized factual questions . . . will not bar class certification." *Gary Plastic Packaging Corp.*, 903 F.2d at 180.  Rather, there must be a "sufficiently clear showing of the defense's applicability to the representative plaintiff." *Bowling*, 2019 WL 1760162, at *4 (quoting *In re Omnicom Grp., Inc., Sec. Litig.*, No. 02-CV-4483, 2007 WL 1280640, at *4 (S.D.N.Y. Apr. 30, 2007)).

2.  Analysis

Plaintiff seeks to certify a class only on her GBL § 349 claim and defines the class as: "[a]ll persons who, within the applicable statute of limitations period, purchased in the State of New York any of Defendants' One A Day Vita[C]raves Products for personal, family, or household purposes (the 'Class')." (Pl's Mem. 1.)  Defendants argue in opposition that Plaintiff is atypical and inadequate, individual issues predominate, the proposed class is unconstitutionally broad, and Plaintiff has failed to propose a viable damages model.  (*See generally* Defs' Opp.)  The Court addresses the Rule 23 factors, and Defendants' arguments, in turn.

### a.  Numerosity

"To satisfy Rule 23(a)(1)'s numerosity requirement, Plaintiffs must show that 'the class is so numerous that joinder of all members is impracticable.'" *Alves v. Affiliated Care of Putnam, Inc.*, No. 16-CV-1593, 2022 WL 1002817, at *20 (S.D.N.Y. Mar. 30, 2022) (quoting *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 68 (S.D.N.Y. 2018) (quoting Fed. R. Civ. P. 23(a)(1))).  "In this Circuit, numerosity is presumed when the putative class has at least forty members." *Zivkovic*, 329 F.R.D. at 68–69 (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).  "The inquiry is not strictly mathematical," *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 202 (S.D.N.Y. 2018) (citing *Pa. Pub. Sch. Empls. Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014)), and "the district court must analyze each case separately to determine whether the numerosity requirement has been satisfied," *id.*  "Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).

Plaintiff asserts, and Defendants do not contest, that numerosity is satisfied.  (*See* Pl's Mem. 12.)  Specifically, Plaintiff asserts that millions of One A Day VitaCraves products (the "Products") were sold in New York during the class period.  (*See id.*)  This number "suggest[s] far more than 40 individuals comprise [the] class." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405 (S.D.N.Y. 2015).  The numerosity requirement is met.

### b.  Commonality

"Commonality requires that there exist questions of law or fact that are both common to the class and answerable through a class-wide proceeding." *In re Namenda*, 331 F. Supp. 3d at

202 (citing Fed. R. Civ. P. 23(a)(2)); *see also Alves*, 2022 WL 1002817, at *21 (same). "The

Supreme Court has clarified that this prong also requires the plaintiff to demonstrate that the

class members 'have suffered the same injury.'" *Alves*, 2022 WL 1002817, at *21 (citation

omitted). "What matters to class certification is not the raising of common questions but rather,

the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution

of the litigation." *Mangahas v. Eight Oranges Inc.*, No. 22-CV-4150, 2024 WL 2801922, at *6

(S.D.N.Y. May 31, 2024) (alterations adopted) (emphasis in original) (quoting *Barrows v.

Becerra*, 24 F.4th 116, 131 (2d Cir. 2022)).

     Plaintiff asserts that commonality is met because there are four questions common to the

class:

> (i) whether Class Members understood "One A Day" to mean a serving size of one
> gummy per day; (ii) whether Defendants misrepresented the serving size of the One
> A Day Vita[C]raves Products; (iii) whether the serving size misrepresentation was
> material to Class Members; and (iv) whether Class Members overpaid for the One
> A Day Vita[C]raves Products as a result of Defendants' misrepresentations.

(Pl's Mem. 13.) Defendants do not contest that commonality is met, although they do argue that

individual issues predominate over common issues. (*See* Defs' Opp. 13–18.) Because this

argument overlaps with a Rule 23(b)(3) predominance analysis, and because the Parties both

discuss it as a challenge to predominance, the Court will address it below. *Drake v. Bayer

Healthcare LLC*, No. 22-CV-1085, 2024 WL 4204921, at *4 (S.D. Cal. Sept. 16, 2024) (where

defendant argued that individual issues would predominate, noting that the commonality and

predominance analyses overlap and addressing the substance of the argument in the court's

predominance analysis), *appeal pending*, No. 24-7158 (9th Cir. Nov. 26, 2024). "Having

reviewed the record, given the absence of any objection by Defendants, the Court is satisfied that

this requirement is met." *Alves*, 2022 WL 1002817, at *21 (quoting *Hardgers-Powell v. Angels

in Your Home LLC*, 330 F.R.D. 89, 130 (W.D.N.Y. Feb. 1, 2019)).

c.  Typicality

"Typicality 'is satisfied when each class member's claim arises from the same course of

events, and each class member makes similar legal arguments to prove the defendant's liability.'"

*In re Namenda*, 331 F. Supp. 3d at 203 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d

Cir. 1997)); *see also Polvay*, 713 F. Supp. 3d at 11 (same).  "If it is 'alleged that the same

unlawful conduct was directed at or affected both the named plaintiff and class sought to be

represented, the typicality requirement is usually met irrespective of minor variations in the fact

patterns underlying the individual claims.'"  *Polvay*, 713 F. Supp. 3d at 11 (quoting *Robidoux v.

Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993)).

Plaintiff asserts that typicality is met because, like all other class members, Plaintiff

purchased the Product believing that she only needed to take one gummy per day, (Pl's Mem.

14–15), and that Plaintiff has demonstrated causation and need not show reliance, (*id.* 16).

Defendants assert that Plaintiff is subject to unique defenses.  (*See* Defs' Opp. 7–8.)

Specifically, Defendants argue that Plaintiff testified she thought that the serving size for every

multivitamin is one, regardless of brand name.  (Defs' Opp. 7.)  Defendants characterize this and

Plaintiff's ignoring the serving size of the Product and other goods as "atypical shopping habits."

(*Id.* 8.)  Plaintiff testified, in multiple ways and throughout her deposition, that when she bought

the Product, she thought that the label "One A Day" indicated that she need only take one

gummy a day.  (*See, e.g.*, Roberts Decl., Ex. 21 (Dkt. No. 75-21) at 62:14–17 ("Q:  What

misleading about the advertisement?  A:  What's misleading to me is my interpretation of when I

purchased this product that One A Day VitaCrave Gummies for women meant take one a day.");

*id.* at 63:6–10 ("Q:  Is there anything else you find misleading about the label?  A:  Just on the

gummies, one a day.  If it's not going to be one a day on the gummies, I don't think it should

have say [sic] 'One A Day.'"); *id.* at 73:16–19 ("Q:  And – and why are you suing?  A:  Because

14

the way I interpret One A Day VitaCrave Gummies for Women was that I was supposed to be taking one gummy a day.").)  In contrast, Defendants cite to Plaintiff's testimony where she admits that she does not look at the serving size.  (*See* Cohn Decl., Ex. F (Dkt. No. 86-6) at 87:15–20 (Q:  Because your understanding is when you have a multivitamin, you take one, right?  A:  Yeah.  Q:  Whether it's a gummy or tablet, your understanding is you take one, right?  A:  To my understanding, yes."); *id.* at 100:20–23 (Q:  So for all those vitamins you've taken all the ones we just talked about, none of them did you look at the supplement fact section before buying the product, right?  A:  Yes.  I did not look.").)  Defendants argue that consumers, and other putative class members, know that the Product's serving size is two, and cite to individual comments made by respondents to Klein's survey in support of this contention.  (*See* Defs' Opp. 8 (citing Klein Rpt. at ECF 60).)  Defendants state, simply, that "most consumers . . . review[] the back label or serving size," citing Plaintiff's and Klein's deposition testimony as demonstrating that Plaintiff does not review serving size information and that most consumers do so, respectively.  (*See id.*)

Defendants' conclusory statements and cherry-picked deposition testimony fail to make a showing that the issue of knowledge of serving size is unique to Plaintiff or, relatedly, that it would threaten to become the focus of litigation.  This may be "a colorable unique defense," but its mere existence is not ground to deny certification.  *See In re Omnicom Grp., Inc. Sec. Litig.*, 2007 WL 1280640, at *4.  "Courts have found typicality to be satisfied in false advertising cases where" the allegations amount to:  "[p]laintiffs were exposed to and allegedly relied upon [d]efendant's advertising and business practices in purchasing [the product], which they allege was at inflated prices due to the misrepresentations."  *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 268 (E.D.N.Y. 2019) (citing *Belfiore*, 311 F.R.D. at 64, and *Ackerman v. Coca-Cola*

*Co.*, No. 09-CV-395, 2013 WL 7044866, at *11 (E.D.N.Y. July 18, 2013)). This is the case here, and so the Court finds that typicality is met. *See Martin v. Monsanto Co.*, No. 16-CV-2168, 2017 WL 1115167, at *4 (C.D. Cal. Mar. 24, 2017) (finding a plaintiff typical because "[plaintiff] and all class members were exposed to the same statement [on the front of the product], and that they were all injured in the same manner, i.e., the [product] provided less spray solution than promised when diluted in accordance with the instructions on the back label."); *In re Budeprion XL Marketing & Sales Litig.*, No. 09-MD-2107, 2012 WL 2527021, at *7 (E.D. Pa. July 2, 2012) (finding putative class representatives typical even though there were "factual questions as to whether [they] read the labels on [the drug at issue]"); *cf. Wallenstein v. Mondelez Int'l, Inc.*, No. 22-CV-6033, 2024 WL 4293904, at *1 (N.D. Cal. Sept. 25, 2024) (finding plaintiff typical regardless of the fact he read the nutrition facts because, "given the relatively unambiguous representation that Wheat Thins were '100% Whole Grain,' [plaintiff] was not required to read the ingredients label to verify that the representation was accurate."); *Smith v. Keurig Green Mountain, Inc.*, No. 18-CV-6690, 2020 WL 5630051, at *3 (N.D. Cal. Sept. 21, 2020) (finding that plaintiff was typical despite "[t]he fact that [p]laintiff did not notice [language on the product's label]").

          d.  Adequacy

     "Adequacy requires that 'the representative parties fairly and adequately protect the interests of the class.'" *Alves*, 2022 WL 1002817, at *21 (quoting Fed. R. Civ. P. 23(a)(4)). Courts must ensure that "members of the class possess the same interests, and that no fundamental conflicts exist among members." *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013). "Adequacy is a two-step process: '[1] the proposed class representative must have an interest in vigorously pursuing the claims of the class, and [2] must have no interests antagonistic to the interests of other class members.'" *Mujo v. Jani-King Int'l, Inc.*, No. 16-CV-1990, 2019

16

WL 145524, at *6 (D. Conn. Jan. 9, 2019) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). Defendants do not argue that Plaintiff would not fairly and adequately protect the interests of the class; rather, they argue that Plaintiff is subject to unique defenses. (*See* Defs' Opp. 8–12.) The Court addresses these arguments below.

i.  Causation and Injury Under GBL § 349

First, Defendants contend that Plaintiff cannot demonstrate causation and injury under GBL § 349 and so lacks standing. (*See id.* 8–11.) Plaintiff counters that Defendants' unique defenses are inapplicable to Plaintiff, (*see* Pl's Reply 1–3).

Defendants argue that Plaintiff is inadequate because she continued to buy multivitamins manufactured by Defendants. (*See* Defs' Opp. 9.) But a fair reading of Plaintiff's deposition transcript indicates that, after initiating this Action, she bought the *capsule* version of the Product, not the gummy version. (*See* Cohn Decl., Ex. F at 109:3–5 ("Q:  And so you thought you'd give them another chance or something?"  A:  No.  The One A Day of the capsules is one a day.").) This is not, then, a scenario where the plaintiff is rightly deemed inadequate for "repeatedly purchas[ing]" the product in question after learning of the alleged misrepresentation or deceptive act, thereby calling into question whether the plaintiff is injured as alleged in her complaint. *See Cabrera v. Bayer Healthcare LLC*, No. 17-CV-8525, 2024 WL 1699357, at *6 (C.D. Cal. Feb. 23, 2024).

Defendants also argue that, because Plaintiff testified she "would take one gummy per day regardless of the name," she did not rely on the purported misrepresentations. (Defs' Opp. 8; *see also* Cohn Decl., Ex. F at 87:2–20.) Plaintiff counters that she testified she chose the Product because its branding made her believe that she need only take one gummy a day. (*See* Pl's Mem. 1–2; *see also* Roberts Decl., Ex. 21 at 105:8–11.) Plaintiff testified multiple times

17

that she bought the Product because of the "One A Day" brand name.  *See supra* Section II.B.2.b

(listing testimony citations).  While Plaintiff's testimony is somewhat inconsistent, this defense

does not "threaten to become the focus of the litigation such that [Plaintiff] could not act in the

best interest of the absent class members."  *In re Cablevision Consumer Litig.*, No. 10-CV-4992,

2014 WL 1330546, at *9 (E.D.N.Y. Mar. 31, 2014) (internal quotation marks omitted).  Put

differently, Plaintiff's vitamin consumption habits in general do not render her unable to

vigorously pursue the claims of the class or "uncover conflicts of interest between [Plaintiff] and

the class [she seeks] to represent."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625

(1997).  On the contrary, it is eminently possible, if not likely, that many class members have

bought other multivitamins and may have consumed them in accordance with or in contravention

of the recommended serving size.  *Cf. In re Scotts EZ Seed Litig.*, 304 F.R.D. at 406 (finding, in

a typicality analysis, that unique defense did not weigh against certification where it was likely

that many class members acted as putative lead plaintiffs did).

### ii.  Plaintiff's Criminal History

Defendants argue that Plaintiff is "an unrepentant convicted felon" and that her

"disturbing" criminal history demonstrates that she lacks "the honesty and trustworthiness to

serve as a class representative."  (Defs' Opp. 7, 11.)  Plaintiff anticipates this argument and

responds that her conviction for robbery in the second degree is her only conviction and that it

did not involve fraud, dishonesty, or deception.  (*See* Pl's Mem. 18–19; Pl's Reply 3–4.)

"A person who has been convicted of a crime is not, by virtue of that fact, forever

disabled from acting as a class representative."  *Fishon v. Peloton Interactive, Inc.*, No. 19-CV-

11711, 2022 WL 20053871, at *2 (S.D.N.Y. Sept. 29, 2022).  An extensive criminal history or

convictions for fraud or other forms of dishonesty or deception may render a class representative

18

inadequate. *See id.*; *see also Stewart v. Hudson Hall LLC*, No. 20-CV-885, 2021 WL 6285227, at *13 (S.D.N.Y. Nov. 29, 2021) (finding inadequate a plaintiff who, in the course of an armed robbery, misrepresented himself as a delivery person); *Villare v. ABIOMED, Inc.*, No. 19-CV-7319, 2020 WL 3497285, at *7 (S.D.N.Y. June 29, 2020) (finding inadequate a plaintiff who had a criminal fraud conviction); *Jones v. Ford Motor Credit Co.*, No. 00-CV-8330, 2005 WL 743213, at *19 (S.D.N.Y. Mar. 31, 2005) (collecting cases). Further, "a 'clear nexus' must exist between the conviction and the class claims." *Passman*, 671 F. Supp. 3d at 448 (citing *Jones*, 2005 WL 743213, at *19).

Here, there is obviously no clear nexus between robbery in the second degree and alleged misrepresentation in the sale of multivitamins. Defendants cite the correct standard, but then ignore it and argue that Plaintiff's conviction of robbery in the second degree, (Cohn Decl., Ex. F at 164:2), renders her inadequate, (*see* Defs' Opp. 11–12). Defendants have failed to show this nexus, which is unsurprising because they cannot, and so the Court's inquiry stops there. *Cf. Wood v. Mike Bloomberg 2020, Inc.*, 746 F. Supp. 3d 185, 199–200 (S.D.N.Y. 2024) (rejecting argument that prior criminal convictions rendered plaintiffs inadequate where defendant "fail[ed] to show that a clear nexus existed between the conviction and the class claims." (quotation marks and citation omitted)); *Passman*, 671 F. Supp. 3d at 448 (finding that a plaintiff's criminal history did not render him inadequate where his convictions were at least 16 years old and did not "appear to have required proof of any false statements."); *Jones*, 2005 WL 743213, at *19 (finding adequate a plaintiff who had past criminal convictions that "by no means 'touch[ed] upon' the class claims."). Plaintiff's status as a person convicted of a crime does not, by itself, bar her from being an adequate class representative.

e.  Ascertainability

"The ascertainability requirement 'requires only that a class be defined using objective criteria that establish a membership with definite boundaries.'"  *Polvay*, 713 F. Supp. 3d at 11 (quoting *In re Petrobras Sec.*, 862 F.3d at 264).  The standard is "not demanding and is designed only to prevent the certification of a class whose membership is truly indeterminable."  *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 407 (quoting *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 568, 567 (S.D.N.Y. 2014)).  Plaintiff contends just that, proposes that the class "consists of all consumers who, within the applicable statute of limitations period, purchased in the State of New York any of Defendants' One A Day VitaCraves Product," and submits that receipts, both physical and digital, may be used to determine class membership.  (Pl's Mem. 20.)  Here, Plaintiff's proposed objective criteria is similar to that which has been deemed sufficient under this requirement.  *See Famular v. Whirlpool Corp.*, No. 16-CV-944, 2019 WL 1254882, at *4 (S.D.N.Y. Mar. 19, 2019) (in a GBL § 349 case, finding ascertainable a class "consisting of individuals who purchased the allegedly mislabeled washing machines in New York"); *Hart v. BHH, LLC*, No. 15-CV-4804, 2017 WL 2912519, at *6–7 (S.D.N.Y. July 7, 2017) (finding ascertainable a class of individuals who purchased nearly 2.4 million units of a product in question); *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 407 (finding ascertainable "classes consisting of New York and California purchasers of EZ seed packages containing the [disputed] claim."); *see also Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 539 (E.D.N.Y. 2017) (in a GBL § 349 case, finding ascertainable a class of "a particular group of individuals who were harmed in a particular way (defrauded by labels and marketing materials) during a specific

period in particular areas." (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660–61 (7th Cir. 2015)).[2]

In sum, Plaintiff has satisfied all four Rule 23(a) requirements and the additional implied ascertainability requirement.

### f. Predominance

"The predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (quotation marks omitted); *Alves*, 2022 WL 1002817, at *22 (same). Although "commonality, typicality, and predominance overlap," *Wynn v. N.Y.C. Hous. Auth.*, 314 F.R.D. 122, 128 (S.D.N.Y. 2016), predominance is "even more demanding" than the Rule 23(a) requirements, *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). Rule 23(b)(3) requires

---

[2] Defendants argue that this class sweeps in uninjured individuals and that a narrower class limited to deceived consumers is not ascertainable because there are no objective criteria for identifying those class members. (Defs' Opp. 21.) Defendants' argument sounds more as challenging predominance and so is addressed in that section. *See* infra Section II.B.2.f.

Defendants also argue that Plaintiff's "proposed class is vastly overbroad and cannot pass constitutional muster" because class members may be uninjured, and therefore lack standing, and consequently Plaintiff cannot ascertain a class that is limited to deceived consumers. (See Defs' Opp. 18–22.) Plaintiff counters that she need only show "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." (Pl's Opp. 6 (italics omitted) (quoting *Bustamante v. KIND, LLC*, 100 F.4th 419, 426 (2d Cir. 2024)).) According to Plaintiff, if she makes this "reasonable consumer" showing, "then all consumers are injured and have standing as such." (Pl's Reply 7.) The Court declines to address the merits of Defendants' argument, or Plaintiff's assertions to the contrary, because this argument is more appropriate for summary judgment as opposed to class certification. *See In re Kind LLC "Healthy and All Natural" Litig.*, 627 F. Supp. 3d 269, 283–92 (S.D.N.Y. 2022) (addressing at summary judgment, and after class certification, whether record evidence "could allow a factfinder to determine a reasonable consumer's understanding of [the alleged deceptive statement]").

21

"a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 459 (2013) (emphasis in original).

Defendants argue that individual issues predominate because class members may have different interpretations of disputed language. (*See* Defs' Opp. 13–16.) In other words, they argue that whether consumers were confused by the "One A Day" label "cannot be proven on a class wide basis." (*Id.* 16 (quotation marks and citation omitted).) "The predominance analysis considers whether that common question is capable of common answers on the basis of generalized proof—i.e.[,] whether an 'objective, reasonable consumer would be deceived." *Goldemberg*, 317 F.R.D. at 388. GBL § 349 makes it unlawful to engage in "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York. N.Y. Gen. Bus. Law § 349. "To establish a prima facie case under GBL § 349, 'a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'" *In re Scotts EZ Seed Litig.*, 304 F.R.D at 409 (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). Materiality under GBL § 349 is an objective inquiry; a deceptive act is defined as one "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 317 F.R.D. 374, 389 (S.D.N.Y. 2016) (alteration adopted) (internal quotation marks and citation omitted). The same analysis applies to false advertising claims brought under GBL § 350. *Id.*; *see also Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (N.Y. 2002). Additionally, neither Section 349 nor 350 requires proof of reliance, *see Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y.

2012), nor proof that defendants intended to mislead consumers, *see Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (N.Y. 1995).

The first element is met because all class members saw the brand name "One A Day" because "the statement appeared in large letters on the front" of the Product's bottle. *Ebin*, 297 F.R.D. at 568. "Consumers of the same product, exposed to the same marketing and packaging, will have almost entirely the same claims with at most 'minor variations' in the facts surrounding their purchase of the products." *Goldemberg*, 317 F.R.D. at 400. Defendants argue that some consumers view the back label and read the Product's Supplement Facts, revealing a serving size of two. (*See* Defs' Opp. 17.) Here, however, the alleged deceptive act is front and center *and uniform* on every package. *See Marotto v. Kellogg Co.*, 415 F. Supp. 3d at 481 (finding predominance may be met in a GBL § 349 case where "a product and its labeling remain constant and are uniform between customers." (alterations adopted) (quotation marks omitted) (quoting *Goldemberg*, 317 F.R.D. at 389)).

The second element, materiality, is also met. Importantly, *proving* materiality is not the question for class certification. *See Amgen, Inc.*, 568 U.S. at 468 ("[U]nder the plain language of Rule 23(b)(3), plaintiffs are not required to prove materiality at the class-certification stage."). Rather, the question here is whether materiality *can be determined* on a class-wide basis. The answer is yes. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409 ("Classwide evidence will be used to establish whether [the product in question's label] was [misleading], and if so, whether it was likely to mislead a reasonable consumer acting reasonably under the circumstances."); *Goldemberg*, 317 F.R.D. at 389 ("[T]he potentially common question of whether a given product's advertising set . . . is misleading can be measured under an objective standard: whether it was 'likely to have misle[d] a reasonable consumer acting reasonably under the

circumstances.'" (quoting *Oswego Laborers' Loc. 214 Pension Fund*, 85 N.Y.2d 20, 26 (1995))).

Like the plaintiffs in *In re Scotts* and *Goldemberg*, Plaintiff here alleges that putative class

members suffered economic harm when they paid a premium based on a misleading claim,

which will be determined by class-wide evidence.  *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at

409; *see also In re Kind LLC "Healthy and Natural" Litig.*, 337 F.R.D. 581, 600 (S.D.N.Y.

2021) (finding in a similar case that predominance was met and that "[o]ther courts in this

district have come to the same conclusion."), *class decertified on other grounds*, 627 F. Supp. 3d

269 (S.D.N.Y. 2022); *Goldemberg*, 317 F.R.D. at 402 (finding that damages for the injury of

purchasing a product with a misleading label could be determined on a class-wide basis and

certifying the class).

 Finally, Plaintiff must demonstrate injury.  "Injury is adequately alleged under GBL

§§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants'

inaccurate representations."  *Goldemberg*, 317 F.R.D. at 393 (quoting *Ackerman*, 2010 WL

2925955, at *23).  Again, Plaintiff is not required to prove injury, but rather must demonstrate

that class-wide questions predominate.  To satisfy this element of the predominance requirement,

Plaintiff must propose a damages model consistent with her theory of liability.  *See Comcast*

*Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  Plaintiff's damages model is as follows:

> Plaintiff and Class Members purchased a product labeled "One A Day" but with a
> serving size of two.  Thus, if Plaintiff and Class Members took only one gummy
> each day, they were only getting half of the vitamin benefits the product
> promised.  Further, for One A Day Vita[C]raves Products labeled with, say, "170
> gummies," the product contained only 85 servings, meaning the Product lasted for
> half as many days as represented.  Accordingly, Plaintiff is seeking, for herself
> and for all Class Members, "half of what [she] paid for the vitamins."

(Pl's Mem. 23.)  Plaintiff asserts that damages can be measured class-wide, and offers a

methodology by her expert, Colin B. Weir, who calculates Defendants' sales of the Product in

New York during the proposed Class Period.  (*See* Weir Decl. ¶ 9.)  Plaintiff contends that "[t]he

Class' actual damages are thus . . . half of" Weir's calculation.  (*See* Pl's Mem. 23.)  Defendants contend that this is "perfunctory administrative work" and "not a model nor methodology for measuring damages."  (Defs' Opp. 22.)  While it appears that Weir does not characterize his work as a damages model, (*see* Cohn Decl., Ex. G (Dkt. No. 86-7) at 65:11–18 ("Q:  You don't discuss this theory of damages in your report in this case; correct?  A:  That was not part of my assignment in this case.  And so, no, I did not.  Q:  And you  don't discuss any theory of damages in your report; right?  A:  That was not part of my assignment.  So, no, I do not."); *id.* at 75:17–21 (Q: . . . you have no opinion on what the proper damages model to apply in this case would be, do you?  A:  I have not been asked to form such an opinion, nor am I offering one.")), that is not dispositive of whether Plaintiff has proposed a damages framework consistent with her theory of liability.  Plaintiff's "benefit-of-the-bargain [damages] model, albeit simplistic, is adequately tied to [her] theory of liability . . . and appears to be capable of measuring damages on a class[-]wide basis."  *Martin*, 2017 WL 1115167, at *8.  Contrary to Defendants' assertion, (Defs' Opp. 23–24), courts in the Second Circuit have entertained "benefit of the bargain" damages theories under NY GBL claims, *see Kane v. Univ. of Rochester*, No. 23-CV-6027, 2024 WL 1178340, at *17 (W.D.N.Y. Mar. 19, 2024) ("Lost benefit of the bargain is a viable theory of injury under GBL § 349." (quotation marks and citation omitted)); *Yee Ting Lau v. Pret A Manger (USA) Ltd.*, No. 17-CV-5775, 2018 WL 4682014, at *4 & n.45 (S.D.N.Y. Sept. 28, 2018) (describing the benefit of the bargain damages theory as "a less strict formulation alleging that defendants' deceptive practices allowed them to charge a higher price than they otherwise could have for a certain product will suffice" under GBL § 349).

    While Defendants have pointed out flaws in Plaintiff's "damages model," the Court concludes that those flaws are not sufficient to defeat class certification.  Defendants may, of

course, challenge the model and related expert testimony at summary judgment and through cross-examination, presentation of contrary evidence, and expert testimony at trial. *See Martin*, 2017 WL 1115167, at *9 (finding that plaintiff's damages models "[were] adequately tied to [p]laintiff's theory of liability" and that flaws in those models "[were] not sufficient to defeat class certification" because defendant could challenge those models at trial); *cf. Passman*, 671 F. Supp. 3d at 452 (noting that defendant's arguments as to predominance go instead to "an alleged failure of proof as to an element of the plaintiffs' cause of action" and, as such, "are properly addressed to the factfinder at summary judgment or during a trial, not on a motion to certify the class." (quoting *Amgen*, 568 U.S. at 470)).

Defendants' last stab at Plaintiff's damages model concerns her calculation of class-wide statutory damages at over $100 million, which Defendants characterize as unable to "pass constitutional muster." (*See* Defs' Opp. 24.) While there may be merit to Defendants' argument, it is premature. *See In re Scotts EZ Seed Litig.*, No. 12-CV-4727, 2017 WL 3396433, at *6 (S.D.N.Y. Aug. 8, 2017) (finding the same argument premature because a jury had not yet awarded damages). Disparate damages can offend due process, but that is a hypothetical concern until damages are awarded, and therefore such arguments are not considered "to prevent [class] certification." *Parker v. Time Warner Entertainment Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003); *see also In re Scotts EZ Litigation*, 2017 WL 3396433, at *6 (noting that the court was "sympathetic" to defendants' concern but denying summary judgment because the argument was premature).

### g.  Superiority

Finally, a proposed class must satisfy the superiority requirement, which necessitates a finding that "a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  In making this determination, courts

consider

> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions; (B) the extent and nature of any litigation concerning
> the controversy already begun by or against class members; (C) the desirability or
> undesirability of concentrating the litigation of the claims in the particular forum;
> and (D) the likely difficulties in managing a class action.

*Id.*  Plaintiff argues that it would cost more to litigate class claims individuals, that there are no

currently pending cases against Defendants under the asserted theory, there is no reason why the

Action should not be concentrated in this forum, and that the case is manageable "because

liability will be established predominantly through common class[-]wide proof."  (*See* Pl's Mem.

25.)  Defendants do not dispute this Rule 23(b) requirement.  (*See generally* Defs' Opp.)

   The Court agrees with Plaintiff that all four factors weigh in favor of certification.

Where, as here, proceeding individually would be prohibitive for class members with small

claims, the first factor favors certification.  *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 415.

There is no indication that other litigation concerning this controversy is ongoing and no reason

that this litigation should not be concentrated before the Court.  "Finally, any concerns about

manageability 'rely, almost entirely, on a premise the Court has already rejected—namely, that

innumerable individualized inquiries will swallow common ones.'"  *Id.* (quoting *Haddock v.*

*Nationwide Fin. Servs., Inc.*, 293 F.R.D. 272, 287 (D.Conn. 2013)).

   The Court therefore finds that Plaintiff has satisfied all of the necessary Rule 23

requirements.

III.  Conclusion

For the reasons set forth above, Defendants' Objection is overruled and Plaintiff's

Motion is granted.  The Clerk of the Court is respectfully directed to terminate the pending

Motion.  (Dkt. No. 69.)  The Court will hold a telephonic status conference on April 23, 2025, at

10:30 AM.

SO ORDERED.

Dated:    March 19, 2025
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge